672 So.2d 1019 (1996)
Anthony James DUPLESSIS, et al.,
v.
WARREN PETROLEUM, INC., et al.
No. 95-CA-1794.
Court of Appeal of Louisiana, Fourth Circuit.
March 27, 1996.
*1020 Eileen C. McCarthy and Dwan S. Hilferty, New Orleans, for Appellants.
Carter & Cates, Sidney H. Cates, IV, New Orleans, for Appellees.
Before BARRY, KLEES and BYRNES, JJ.
BARRY, Judge.
A.J., James, Joseph, Clarence and Shannon Duplessis sued Warren Petroleum, Inc., Rex Leinweber, its manager, Cart Enterprises, Inc., and Gene Cart based on intentional racial discrimination and wrongful discharge, retaliation, tortious interference with their *1021 contract of employment, defamation, slander, and libel. The trial court granted summary judgment in favor of Warren Petroleum and Leinweber and the plaintiffs appeal.[1]
The plaintiffs were employed by Cart Enterprises and/or Gene Cart in January, 1990 and worked in the maintenance shop at Warren Petroleum's Venice site. A.J. Duplessis was a carpenter and the others were helpers. On January 15, 1991 A.J. Duplessis asked Cart if he and his son, Shannon, could take the day off in honor of Martin Luther King's birthday to attend a march in Plaquemines Parish. Gene Cart gave his permission. Cart also allowed Joseph Duplessis take the day off. A.J. Duplessis was suspended the next day and discharged about a week later allegedly because Warren Petroleum wanted him fired for taking leave to observe King's birthday. According to the petition, a white carpenter replaced A.J. Duplessis. Joseph, Clarence, and Shannon Duplessis were discharged soon after allegedly due to cutbacks, but a part-time employee who had not requested leave on the holiday, was given full-time work.
The plaintiffs alleged that none of their replacements had observed Martin Luther King's birthday. They claimed that their discharges were due to racial discrimination prohibited by La.R.S. 23:1006, La.R.S. 51:2231 and Title VII of the Civil Rights Act of 1964. Clarence, Joseph, and Shannon also alleged retaliation against their family because A.J. Duplessis filed an EEOC claim. The plaintiffs alleged that Warren Petroleum and Leinweber tortiously interfered with their "contract of employment with Gene Cart and Cart Enterprises..." The plaintiffs also alleged that the defendants defamed, slandered, and libeled them "by failing to report the true nature of their dismissal from employment."
Warren Petroleum and Rex Leinweber supported their motion for summary judgment with affidavits of Gene Cart and Rex Leinweber, who declared that under the contract between Warren Petroleum and Cart Enterprises Warren Petroleum exercised no supervision or control over Cart employees and had no authority as to hiring and firing decisions of Cart Enterprises.[2] Cart was a contractor and the plaintiffs were subcontractors. According to Cart, Shannon Duplessis never reported to work on January 15, 1990 and Clarence worked that day; he gave Joseph Duplessis permission to take the day off. He said A.J. Duplessis was fired because he violated Cart's policy that subcontractors cannot fail to report in order to work another job (A.J. took off January 15, 1990 to work another job). Cart stated that Warren Petroleum did not direct him to terminate the plaintiffs' employment; the decision was made by Cart Enterprises. According to Leinweber, he received no requests from plaintiffs' prospective employers for information relating to their employment. In answers to interrogatories all plaintiffs listed Cart Enterprises as their employer in January, 1990. According to the defendants' statement of uncontested facts, the Equal Employment Opportunity Commission (EEOC) found no employer-employee relationship between Warren Petroleum and A.J. Duplessis.
Plaintiffs submitted affidavits in which they declared that every morning Warren Petroleum's head engineer Jeff Adams, or another Warren Petroleum engineer, gave Cart work orders and directions and Cart distributed them to the crew. The affidavits *1022 stated that Warren Petroleum set the 7:00 a.m. to 4:00 p.m. work day, provided tools, set lunch after 12:00 p.m., and they signed a Warren time sheet. A.J. Duplessis stated that he went to Warren Petroleum to interview with Adams for a job at Warren Petroleum; once he was hired, he brought his brothers to the job as his crew. He stated that he reported for work on January 15, 1990, but not much work was scheduled. He asked for the day off to attend the march at 1:00 p.m. and Cart approved it. According to A.J. he then set up a private job which would take a couple of hours. When he returned to work the next day he was suspended and on January 23, 1990 he and his son, Shannon, were fired. Joseph and Clarence reported to work on January 15, but there was little work. Joseph asked to take off the day but Clarence worked. Joseph and Clarence were laid off on January 26, 1990 allegedly due to cutbacks. All four were replaced in approximately one week.
The plaintiffs also submitted the affidavit of Charles Barthelemy, an employee of Brown & Root (another contractor) who did maintenance work at Warren Petroleum. He stated that Warren Petroleum's employees participated in supervising Brown & Root employees and the tools were provided by Warren Petroleum. He knew that at least two and as many as four people were hired to replace the Duplessis family.

LAW AND ANALYSIS
Appellate courts review summary judgments de novo and use the same criteria as the trial court. Summary judgment is a drastic remedy and should be granted only if the pleadings, depositions, interrogatory answers and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and movers are entitled to a judgment as a matter of law. La.C.C.P. art. 966; Beis v. Bowers, 94-0178 (La.App. 4th Cir. 1/19/95), 649 So.2d 1094, writ denied, 95-0429 (La. 3/30/95), 651 So.2d 847. Any doubt is resolved in favor of trial on the merits. Raine v. CECO Corporation, 627 So.2d 713 (La.App. 4th Cir.1993).
"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters therein." La.C.C.P. art. 967. It is insufficient for an affiant to merely declare that he has personal knowledge of a fact. The affidavit must affirmatively establish that the affiant is competent to testify as to the matter by a factual averment showing how he came by the knowledge. Barham & Churchill v. Campbell & Associates, 503 So.2d 576 (La.App. 4th Cir.1987), writ denied, 503 So.2d 1018 (La.1987). An affidavit in opposition which contains hearsay statements aimed at impeaching the credibility of the mover's affidavit does not create a material issue of fact and defeat the summary judgment. Charles v. Faust, 487 So.2d 612 (La.App. 4th Cir.1986).
The plaintiffs primarily filed an intentional discrimination in employment suit under La.R.S. 51:2231 et seq. (Louisiana Commission on Human Rights), La.R.S. 23:1006 (Intentional Discrimination in Employment), and Title VII of the Civil Rights Act (as amended, 42 U.S.C. 2000e et seq.). In discrimination actions the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Then the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason. The plaintiff must show that the legitimate reason was a discriminatory pretext. Guillory v. State Farm Insurance Company, 94-1405 (9/2/95), 662 So.2d 104 (Ciaccio, J. dissenting), quoting Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 251-53, 101 S.Ct. 1089, 1092-94, 67 L.Ed.2d 207 (1981).
La.R.S. 51:2242 provides in pertinent part:
A. It shall be a discriminatory practice for an employer:
(1) To fail, to refuse to hire, or to discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment because of the individual's race, creed, color, religion, sex, age, disability, as defined in R.S. 51:2232(11), or national origin.
*1023 Employer is broadly defined in La.R.S. 51:2242C(3) as "a person engaged in an industry affecting commerce who has twenty-five or more employees for each working day in each working day in each of twenty or more calendar weeks in the current or preceding year and any agent of such person."
42 U.S.C. 2000e-2 provides in pertinent part:
(a) Employer practices
It shall be an unlawful employment practice for an employer
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin....
Tracking the language in 42 U.S.C. 2000e-2, La.R.S. 23:1006B(1) provides:
It shall be unlawful discrimination in employment for an employer to:
(a) Intentionally fail or refuse to hire, refer, discharge, or to otherwise intentionally discriminate against or in favor of an individual with respect to compensation, terms, conditions, or privileges of employment because of race, color, religion, sex, disability as defined in R.S. 51:2232(11), or national origin.
Employer is defined in La.R.S. 23:1006A(1):
For the purpose of this Part, "employer" means and includes a person, association, legal or commercial entity, labor union, employment agency, the state, its agencies, boards, commissions, or political subdivisions receiving services from an individual and in return giving compensation of any kind to said individual and who employs more than fifteen employees.
Although the test in Louisiana to determine if an employer-employee relationship exists relates to "right of control," the legislature gave "employer" a specific definition which controls in an action for intentional discrimination in employment. La.R.S. 23:1006. This Court considered whether the defendant paid the plaintiff's wages and withheld federal, state, unemployment or social security taxes from his check. Onyeanusi v. Times Picayune Publishing Corp., 485 So.2d 622 (La.App. 4th Cir.1986).
Plaintiffs rely heavily on hearsay in their affidavits as to what Cart said about Warren Petroleum's wishes, which is not admissible. In interrogatory answers all the plaintiffs declared that they were employed by Cart Enterprises, Inc. in January, 1990, not Warren Petroleum. Plaintiffs alleged that they had contracts of employment with Cart. The plaintiffs worked for Cart Enterprises and/or Cart, who had a contract with Warren Petroleum. Cart Enterprises was receiving services from the plaintiffs and compensating them for their work. Warren Petroleum may not fall within this Circuit's interpretation of employer under La.R.S. 23:1006, but that does not end the discussion. The plaintiffs filed suit also under La.R.S. 51:2231 et seq. and Title VII, which do not contain the limiting definition of employer in La.R.S. 23:1006.
"Employer" under Title VII does not have the same limited interpretation, but Title VII requires that charges be filed with the EEOC against those who committed allegedly unlawful conduct. 42 U.S.C. 2000e-5(e). Plaintiffs and defendants acknowledge A.J. Duplessis' EEOC claim. A.J. Duplessis may assert a Title VII claim. The other plaintiffs did not allege that they filed charges with the EEOC and claimed only retaliation for A.J.'s claim; if they did not file with the EEOC, they are barred from asserting Title VII claims.
In order to be liable under Title VII a defendant must fall within the statutory definition of employer and exercise substantial control over significant aspects of the compensation, terms, conditions, or privileges of plaintiff's employment. Magnuson v. Peak Technical Services, Inc., 808 F.Supp. 500 (E.D.Va.1992). Under 42 U.S.C. § 2000e(b) employer means "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year...." 42 U.S.C. 2000e(f) defines "employee" as "an individual employed by an employer...."
*1024 Title VII liability does not apply solely to single employer situations. Aggrieved individuals may sue a defendant who is not in a direct employment situation. The term "employer" is construed in a functional sense to encompass persons who are not employers in conventional terms, but who control some aspect of the individual's compensation, terms, conditions or privileges. A company can be a "joint employer" under Title VII if it contracts with another for the services of the aggrieved individual and actually exercises substantial control over the terms and conditions of employment. Id.
Magnuson involved a summary judgment filed in federal court. Rebecca Magnuson worked for Peak Technical Services, Inc. which provided employees to client corporations pursuant to a service contract. Peak provided employees for Volkswagen of America's field marketing and manufacturer's representatives program. Magnuson interviewed with Volkswagen and was hired by Peak. She trained with Volkswagen and went to work with its dealerships but was paid by Peak. She later became a manufacturer's representative at one dealership. Magnuson had no contractual employment relationship with Volkswagen, but the company exercised significant control over the manner and means of her performance. She was under the supervision of a Volkswagen manager. The federal district court concluded that there remained genuine issues of material fact as to whether Volkswagen was her employer under Title VII and the motion for summary judgment was denied. Id.
In Nowlin v. RTC, 33 F.3d 498 (5th Cir.1994), citing to Mares v. Marsh, 777 F.2d 1066 (5th Cir.1985), the Fifth Circuit discussed the standard to be used in multiple employer situations to determine employer status. It noted the "agency" test (right of control), the "economic realities" test (the dependence of the employee upon the business to which he renders service), and the "hybrid" test (extent of employer's right to control the means and manner of the worker's performance).[3] Citing to Mares v. Marsh, 777 F.2d 1066 (5th Cir.1985), the Fifth Circuit noted that it had accepted the factors of the hybrid test set out in Spirides v. Reinhardt, 613 F.2d 826 (D.C.Cir.1979). In addition to the most crucial factor, right of control, the other factors are:
(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without a supervisor; (2) the skill required in the particular occupation; (3) whether the `employer' or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the `employer'; (9) whether the worker accumulates retirement benefits; (10) whether the `employer' pays social security taxes; and (11) the intention of the parties.
Nowlin, 33 F.3d 498, 506-507, fn. 17, quoting Spirides, 613 F.2d at 832.
However, under Title VII Warren Petroleum does not have to directly pay a plaintiff in order to be considered an employer. Under the functional definition and considering the factors of the hybrid test used in multiple employer cases, Warren Petroleum exercised a right of control over the plaintiffs' work, provided the equipment, set up the work schedule and job assignment, and the place of work on a daily basis. There remain genuine issues of material fact as to whether Warren Petroleum can be considered plaintiffs' employer liable for racial discrimination under 42 U.S.C. 2000e and La.R.S. 51:2242 et seq. and it is not clear that the defendants carried their burden of proof relating to a summary judgment in a discrimination suit.
*1025 In their opposition to summary judgment the plaintiffs do not mention the other causes of action except to state that they noted in their responses to interrogatories that "information relative to their terminations has been released, including to the Louisiana Office of Employment Security." In his response A.J. Duplessis additionally stated that misinformation about his firing was conveyed to an oil company in Venice, but did not name the company. In brief the plaintiffs do not mention the other claims.
To prove defamation the plaintiff must prove defamatory words, publication, falsity, malice, actual or implied, and resultant injury. Landry v. Roberson Advertising Service, Inc., 95-0095 (La.App. 4th Cir. 8/23/95), 660 So.2d 194. Under certain circumstances an employer is entitled to a qualified privilege defense. Williams v. Touro Infirmary, 578 So.2d 1006 (La.App. 4th Cir. 1991). To survive a motion for summary judgment, a defamation plaintiff must produce evidence of sufficient quality and quantity to demonstrate that he likely will be able to meet his burden of proof at trial. Sassone v. Elder, 626 So.2d 345 (La.1993). The plaintiffs' allegations in the petition that the defendants failed to report the true nature of their dismissal and the answers to an interrogatory vaguely stating that misinformation was conveyed could not survive the summary judgment motion.
The theory of recovery for intentional interference with contract has not been expanded beyond the limited facts of 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La.1989), where a plaintiff sued a corporate officer; the broad common law action has not been adopted. Durand v. McGaw, 93-2077 (La.App. 4th Cir. 3/29/95), 635 So.2d 409, writ denied, 94-1081 (La. 6/17/94), 640 So.2d 1318. Summary judgment was properly granted as to that cause of action.
The judgment insofar as it granted partial summary judgment on the defamation and intentional interference with contract is affirmed. The judgment insofar as it granted summary judgment on the intentional racial discrimination claim against Warren Petroleum and Rex Leinweber is reversed and the matter remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] Although the motion for summary judgment was filed by Leinweber and Warren Petroleum, the March 17, 1995 judgment dismissed only Warren Petroleum. A motion to amend was filed and an amended judgment (which included Leinweber) was signed March 27, 1995. The addition of a party to a judgment is not a typographical or calculation error, and cannot be amended by the court at any time under La.C.C.P. art. 1951. Such an addition is a substantive change which can only be made pursuant to a motion for new trial filed within seven days of the judgment exclusive of legal holidays. Because the motion to amend was filed within the time period, we consider it to be a motion for new trial. The "amended" judgment was properly rendered.
[2] Although the memorandum in support of the summary judgment motion and affidavits declared that the contract was attached, the record lodged in this Court does not contain the contract between Warren Petroleum and Cart Enterprises. This Court ordered that the record be supplemented with the contract if it had been properly before the court below. There was no response to the order.
[3] In Nowlin, 33 F.3d at 498, one defendant's summary judgment was affirmed because the plaintiffs had not filed an EEOC claim against it and the other defendants' summary judgments were reversed because the district court did not use the hybrid test, the correct test to be utilized to decide whether a defendant was the plaintiffs' employer.