793 So.2d 254 (2001)
Patsy A. Haley RAMBO, Plaintiff-Appellant,
v.
WILLIS-KNIGHTON MEDICAL CENTER, d/b/a Willis-Knighton Community Education Center, and David Samuels, Defendants-Appellees.
No. 34,864-CA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 2001.
Rehearing Denied August 16, 2001.
*255 Jones & Jones by Johnnie A. Jones, Sr., Baton Rouge, Counsel for Appellant.
Pugh, Pugh & Pugh, L.L.P. by Lamar P. Pugh, Shreveport, Counsel for Appellees.
Before GASKINS, CARAWAY & PEATROSS, JJ.
*256 PEATROSS, J.
In this sexual harassment suit, Plaintiff, Patsy Rambo, appeals the following judgments of the trial court: (1) the trial court's sustaining Defendants', Willis-Knighton Medical Center, d/b/a Willis-Knighton Community Education Center, and David Samuels ("Defendants"), Exception of No Cause of Action as to Ms. Rambo's claim under La. R.S. 23:301-303, the Louisiana Employment Discrimination Law; (2) the trial court's sustaining Defendants' Exception of Prescription regarding Ms. Rambo's claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000(2), et seq.; and (3) the judgment on the merits after trial, which dismissed the remainder of Ms. Rambo's demand with prejudice. For the reasons stated herein, the judgments of the trial court are affirmed.

FACTS
Patsy Rambo was employed by Willis-Knighton Medical Center ("WK"), in the housekeeping department, from September 23, 1996, to October 21, 1998. In March 1998, she was transferred from the WK Health Center in Bossier to the Shreveport location and was assigned to the "outside" area, which included the buildings surrounding the actual hospital building.
During her employment with WK, Ms. Rambo made many complaints to the Human Resource Department, in accordance with WK's grievance procedure, including harassment and mistreatment by her supervisor at WK Bossier City (not Mr. Samuels); being threatened by other employees; having items stolen from her purse; that WK was having her followed; and that she was forced to submit to a strip search by a female security officer whom Ms. Rambo alleges was a lesbian.[1] None of these complaints, made during the time she was employed, however, involved Mr. Samuels. On March 10, 1998, Mr. Samuels became Ms. Rambo's immediate supervisor. She alleges that, shortly after becoming her supervisor, Mr. Samuels began sexually and verbally harassing her. Initially, according to Ms. Rambo, Mr. Samuels made sexual comments and gestures to her, including placing his hands on her "private parts." Ms. Rambo testified that, in late March of 1998, she attempted to make a complaint about Mr. Samuel's alleged sexual harassment by arranging a meeting with Nila Willhoite, Senior Vice President of Administration of WK. On Ms. Rambo's arrival at Ms. Willhoite's office, however, Ms. Willhoite informed her that she had spoken with Jerry Fielder, Director of Human Resources[2], and had learned that Ms. Rambo had filed suit *257 against WK[3]; and, therefore, she could not discuss anything with her. Ms. Rambo testified that she then sent a letter, via facsimile, to Ms. Willhoite containing her allegations against Mr. Samuels. The letter advised Ms. Willhoite that Ms. Rambo had not intended to discuss the then-pending lawsuit, but, rather, was attempting to inform her that she "didn't appreciate being sexually, verbally abused and harassed." At trial, Ms. Willhoite denied having ever received the letter from Ms. Rambo, either by facsimile or through the mail. While Ms. Rambo was in possession of a copy of that letter, she could not, however, produce verification of the receipt of the letter by Ms. Willhoite.[4] Ms. Rambo admitted in her testimony that she made no other attempt to report Mr. Samuel's alleged harassment to WK. In this regard, Marcia Bonanno and Debbie Fortson, both Human Resource Managers at WK, testified that no complaint had been lodged with the Human Resource Department by Ms. Rambo concerning any alleged sexual harassment. Mr. Fielder corroborated this testimony. Instead, Ms. Rambo began concealing a tape recording device in her brassiere in order to capture discussions between her and Mr. Samuels, portions of which were introduced at trial by both Ms. Rambo and Defendants.[5]
On October 14, 1998, while providing deposition testimony in her suit against WK Bossier ("Bossier lawsuit") involving the search by the security officer (See footnote number 1), Ms. Rambo admitted that she had listed her grandson as a child/dependent on her insurance enrollment forms in order to obtain insurance coverage for him. According to WK, Ms. Rambo failed to attend a meeting scheduled, with her knowledge and approval, to discuss WK's discovery of her falsification of the personnel record. It was for these stated reasons that Ms. Rambo's employment was terminated on October 21, 1998.
In her petition filed in the case sub judice, Ms. Rambo alleges that WK did not have an adequate sexual harassment policy; that she was wrongfully discharged for pretextual reasons; that between March and October 1998, Mr. Samuels made continuous sexual advances on her, including sexual messages and inappropriate and unwelcome touching of her person; and that Mr. Samuels threatened to terminate her employment. The allegations of abuse formed Ms. Rambo's claims under La. C.C. art. 2315, La. R.S. 23:301, et seq., and Title VII of the Civil Rights Act of 1964. The trial court granted Defendants' Exception of Prescription regarding the Title VII claims because Ms. Rambo failed to file her petition within 90 days of her receipt of the Dismissal and Notice of Rights from the Equal Employment Opportunity Commission ("EEOC"). The trial court also granted Defendants' Exception of No Cause of Action regarding the claims under La. R.S. 23:301-303. Finally, after a bench trial, the trial court found *258 that Ms. Rambo had failed to carry her burden of proving sexual harassment under "any theory of law," and, therefore, dismissed with prejudice the remainder of her suit.

DISCUSSION

Exception of No Cause of Action
Ms. Rambo challenges the trial court's sustaining Defendants' Exception of No Cause of Action regarding her claims pursuant to Louisiana's Employment Discrimination Law, La. R.S. 23:301-303[6], while allowing her claim under state tort law to proceed to trial. We find that any error in dismissing Ms. Rambo's claims under 23:301, et seq., was harmless in light of the evidence adduced at trial and the conclusion of the trial court after hearing and evaluating such evidence.
The function of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234 (La.1993); Darville v. Texaco, Inc., 447 So.2d 473 (La.1984). No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. La. C.C.P. art. 931. The court, therefore, reviews the petition and accepts well pleaded allegations of fact as true; and the issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., supra; Kuebler v. Martin, 578 So.2d 113 (La.1991); Martin v. Bigner, 27,694 (La.App.2d Cir.12/6/95), 665 So.2d 709.
In Everything on Wheels Subaru, Inc. v. Subaru South, Inc., supra, the supreme court formulated the following general rules regarding partial judgments on exceptions of no cause of action. If there are two or more items of damages or theories of recovery which arise out of the operative facts of a single transaction or occurrence, a partial judgment on an exception of no cause of action should not be rendered to dismiss one item of damages or theory of recovery. In such a case, there is truly only one cause of action, and a judgment partially maintaining the exception is generally inappropriate. On the other hand, if two or more actions are cumulated which could have been brought separately because they were based on the operative facts of separate and distinct transactions or occurrences, a partial judgment may be rendered to dismiss one action on an exception of no cause of action, while leaving the other actions to be tried on the merits. In such a case, there are truly several causes of action and a judgment partially maintaining the exception as to one separate and distinct cause of action is generally appropriate.
In the case sub judice, we recognize that each of Ms. Rambo's asserted causes of actions, or theories of recovery, arose out of the same operative facts surrounding the alleged sexual harassment by Mr. Samuels. As such, the trial court's grant of the partial exception of no cause of action may not have been appropriate. As previously stated, however, we conclude that any error in this regard was harmless.
Ms. Rambo argues that she was wrongfully terminated, i.e., that she was terminated in retaliation for her allegations *259 of sexual harassment against Mr. Samuels. She also suggests that the alleged ongoing sexual harassment created a hostile working environment. These arguments form the bases of Ms. Rambo's claim in her petition under Louisiana's Employment Discrimination Law. First, when a prima facie case of discriminatory or wrongful termination is made, the burden of proof shifts to the defendant to show some legitimate, nondiscriminatory reason for its action. Duplessis v. Warren Petroleum, Inc., 95-1794 (La.App. 4th Cir.3/27/96), 672 So.2d 1019; Plummer v. Marriott Corp., 94-2025 (La.App. 4th Cir.4/26/95), 654 So.2d 843, writ denied, 95-1321 (La.9/15/95), 660 So.2d 460. If the employer satisfies this burden, the employee must then show that the legitimate reason was a discriminatory pretext. Duplessis v. Warren Petroleum, supra. The ultimate burden of persuasion that the employer intentionally discriminated against the plaintiff/ employee, therefore, remains at all times with the plaintiff/employee. Id.; Guillory v. State Farm Insurance Company, 94-1405 (La.App. 4th Cir.9/28/95), 662 So.2d 104.
Ms. Rambo was not restrained in her introduction of evidence at trial regarding the circumstances of her termination. Likewise, the record contains much evidence regarding WK's reasons for terminating Ms. Rambo. After careful review of the record, we are firmly convinced that WK terminated Ms. Rambo for legitimate, nondiscrimatory reasons. The insurance enrollment forms filled out by Ms. Rambo, which are contained in the record, indicate that Ms. Rambo listed one qualified dependent, her child, for purposes of health and life insurance. As previously stated, Ms. Rambo admitted in her deposition testimony in the Bossier lawsuit, that the "child/dependent" listed by her on the insurance forms was, in fact, her grandson. She stated that her intent was to obtain insurance coverage for him. When WK attempted to discuss this serious matter with Ms. Rambo, she failed to attend the scheduled meeting. According to WK's policy[7], these are legitimate bases for termination. Further, Ms. Rambo failed to produce any evidence that the legitimate reasons offered by WK were, in fact, pretextual. On this record, we find no prejudice to Ms. Rambo in the dismissal of the 23:301, et seq., claims; therefore, any error in the granting of Defendants' Exception of No Cause of Action was harmless.

Exception of Prescription
Second, Ms. Rambo assigns as error the trial court's sustaining of Defendants' Exception of Prescription regarding her Title VII claim. Prior to the institution of this lawsuit, Ms. Rambo filed a complaint of employment discrimination with the EEOC as required by 42 U.S.C.A. § 2000e-5(e). On January 13, 1999, Ms. Rambo received a Dismissal and Notice of Rights form from the EEOC. The Dismissal and Notice of Rights form expressly advised Ms. Rambo that suit must be filed within 90 days of receipt of the notice. Both federal and state jurisprudence are in accord. See Berry v. CIGNA/RSI-CIGNA, *260 975 F.2d 1188 (5th Cir.1992); St. Louis v. Texas Worker's Compensation Commission, 65 F.3d 43 (5th Cir.1995), cert. denied, 518 U.S. 1024, 116 S.Ct. 2563, 135 L.Ed.2d 1080 (1996); Winbush v. Normal Life of Louisiana, Inc., 599 So.2d 489 (La.App. 3d Cir.1992). Ms. Rambo, however, argues that, when damages are allowable under state tort law as well as Title VII, the 90-day time limitation does not apply. Instead, according to Ms. Rambo, the limitation applicable to state tort law claims should apply. Ms. Rambo, however, cites no legal authority for this position, nor can we find any.
We conclude, therefore, that Ms. Rambo had, at the latest, 90 days from January 13, 1999, in which to file suit. Since her petition was not filed until October 22, 1999, more than nine months after her receipt of the Dismissal and Notice of Rights form, her claim under Title VII had prescribed.

Judgment on the merits
Ms. Rambo argues that the trial court's ultimate dismissal of her suit after trial was error. Our review of the trial court's factual findings are governed by the manifest error/clearly wrong standard of review. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993). Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Stobart v. State, supra. Under the manifest error standard, the linchpin is whether the trial court's findings are reasonable; even if the appellate court feels its own evaluation of the evidence is more reasonable, the trial court's findings cannot be reversed if they are, in fact, reasonable. Lewis v. State, Through Department of Transportation and Development 94 2370 (La.4/21/95), 654 So.2d 311. In other words, the appellate court may not reverse simply because it is convinced that, had it been sitting as a trier of fact, it would have ruled differently. Id. If there are two permissible views of the evidence, the factfinder's choice between them can virtually never be manifestly erroneous or clearly wrong. Id.
According to Ms. Rambo, Mr. Samuels' conduct created a hostile working environment which ultimately caused her wrongful discharge. The trial court found to the contrary and we can find no manifest error in its conclusion. The evidence presented at trial was clearly weighed by the trial court and appropriate factual findings were made.
The trial court noted that there were basically three sources of evidence produced by Ms. Rambo which support her claim: (1) Ms. Rambo's testimony, (2) excerpts from the audio tapes and (3) the letter that Ms. Rambo testified was sent to Ms. Willhoite complaining of sexual harassment. The trial court then addressed each source of evidence, beginning with the audio tapes. The audio tapes are not clear and most of the discussion recorded thereon is very difficult to understand. Our review of the audio tapes leads us to concur with the trial court that very little of Mr. Samuels' part of the conversations is even discernable. We also agree with the trial court that, while there is obviously arguing going on between Ms. Rambo and Mr. Samuels on the audio tapes, there is no evidence of any sexual harassment. In addition, doubt was cast on the reliability of the recordings by Rob Smith, a recording engineer, who testified on behalf of Defendants. Mr. Smith transferred some of the tapes onto compact *261 discs for Defendants and testified that, in his professional opinion, it was clear that portions of the audio tapes had been edited, or, in other words, someone had re-recorded over portions of the tape in order to insert certain comments into the original conversation being recorded.
Next, regarding the letter that was allegedly faxed to Ms. Willhoite, the trial court simply made a credibility determination. The trial court found Ms. Willhoite and Mr. Fielder to be credible in their testimony that no such letter was received by them, expressly stating that it did not believe Ms. Rambo's testimony that she actually sent the letter.
Finally, the trial court compared Ms. Rambo's testimony at trial with her testimony in her two previous depositions, finding many contradictions and inconsistencies. Noting that Ms. Rambo was well aware of the complaint procedure at WK, having utilized it in the past, the trial court found significant that, by her own admission, she had lodged no other complaint with the Human Resource Department, other than the above mentioned letter to Ms. Willhoite. The trial court clearly made a credibility determination, deciding not to believe Ms. Rambo's allegations of sexual harassment. Credibility determinations are the function and prerogative of the trial court. Lebeaux v. Newman Ford, Inc., 28,609 (La.App.2d Cir.9/25/96), 680 So.2d 1291. We will not, therefore, disturb the trial court's findings on review.
Finally, Defendants assert that, even if Ms. Rambo has proven sexual harassment, they have met the burden of showing the affirmative defense set forth by the Supreme Court in Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).[8] Since, however, we find that Ms. Rambo failed to carry her burden of proof of sexual harassment, we pretermit any discussion of whether or not Defendant WK sufficiently proved the affirmative defense.

CONCLUSION
For the foregoing reasons, the judgments of the trial court sustaining Defendants', Willis-Knighton Medical Center and David Samuels, Exceptions of No Cause of Action and Prescription and the judgment on the merits in favor of Defendants and dismissing Plaintiff's, Patsy Rambo, remaining claim with prejudice, are affirmed. Costs are assessed to Plaintiff, Patsy Rambo.
AFFIRMED.

APPLICATION FOR REHEARING
Before WILLIAMS, GASKINS, CARAWAY, PEATROSS, and KOSTELKA, JJ.
Rehearing denied.
NOTES
[1] Ms. Rambo filed suit for this alleged act. See Patsy Rambo, et al. v. Willis Knighton Bossier Health Center, 34,098 (La.App.2d Cir.6/15/00), writ denied, 00-2157, 766 So.2d 1262 (La.7/28/00), writ granted, case remanded, 00-2157 (La.App.2d Cir.7/28/00), 766 So.2d 1262, writ denied, 00-2615 (La.11/17/00), 774 So.2d 975. The record reveals that Ms. Rambo had had problems with a former co-worker, who was also her neighbor. As a result of allegations made by the latter, Ms. Rambo was suspected of having a gun on her person while at work. She alleges that the security officer who searched her forced her to remove her clothing and touched her in sexual ways that were not necessary to determine if she was, in fact, carrying a weapon. In addition, Ms. Rambo testified in her deposition in that matter that she also believed the security officer stole money from her purse.
[2] At trial, Ms. Willhoite testified that, as Senior Vice President of Administration, it is not within her area of responsibility to accept employee complaints. Such complaints are handled by the Human Resource Department, whose staff is specially trained to deal with employee issues. In the event an employee were to bring a problem or complaint to her attention, it was her practice to immediately inform Mr. Fielder.
[3] This reference is to the suit filed by Ms. Rambo involving the search by the security officer. See footnote number 1, supra.
[4] During discovery in this case, Ms. Rambo produced a copy of the letter to Defendants; however, she stated that, while she recalled there being a cover sheet of some type, she did not have a copy of it. It was not until she was testifying at trial that she attempted to introduce the alleged cover sheet which she claims accompanied the letter sent via facsimile to Ms. Willhoite. The trial court refused to accept the cover sheet into evidence, but accepted a proffer. Other than this alleged cover sheet, which was written entirely in Ms. Rambo's handwriting, there is no evidence, other than Ms. Rambo's own testimony, that this letter was actually transmitted to Ms. Willhoite
[5] More than eight hours of tape were recorded over approximately a seven-month period.
[6] Chapter 3 A of the general statutes embodies Louisiana's Employment Discrimination Law. Section 301 provides the short title, while section 302 contains definitions. The current section 303 was enacted in 1999 and provides authorization for civil suits. This section was, however, blank at the time the instant suit was filed.
[7] WK's employee conduct guidelines, which were introduced at trial, specifically include the giving of false or misleading information to WK, falsification of records such as employment applications and violations of laws or hospital ethics and disobedience or insubordination, including refusal to comply with directives or other instructions of supervisors, as grounds for disciplinary action. The guidelines further provide that the severity of the employee's infraction may warrant immediate dismissal, without proceeding through the stages of verbal and written warnings and/or probation. Jerry Fielder, Director of Human Resources, testified on behalf of Defendants, that Ms. Rambo's violations of WK's conduct guidelines were grounds for termination under WK policy.
[8] In Faragher, The Supreme Court held that an employer has an affirmative defense to claims of sexual harassment by an employee if it can show (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior and (b) that the plaintiff/employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. We will note, however, that the trial court concluded that WK showed a concern for allegations of sexual harassment, had adopted an appropriate policy to deal with such complaints and had effectively informed its employees of its willingness to receive such complaints. We find this conclusion to be fully supported by the record.