Madie C. LANGLEY and
L'Tanya Grimes

v.

PINKERTON'S INC. and CAPITAL
CITY PRESS, L.L.C.

No. CIV.A. 01–1033.

United States District Court,
M.D. Louisiana.

Sept. 4, 2002.

Greg Allen Rozas, Thomas, Rozas & Maloney, LLC, Baton Rouge, for Plaintiffs.

Thomas W. Darling, Windhorst, Gaudry, Ranson, Higgins & Gremillion, Gretna, for Defendants.

## RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT

JOHN V. PARKER, District Judge.

This matter is before the court on a motion by defendant, Capital City Press, L.L.C. ("Capital City Press"), against plaintiffs, Madie C. Langley and L'Tanya Grimes, for partial summary judgment (doc. 31). No opposition has been filed and there is no need for oral argument. Jurisdiction is based upon 28 U.S.C. § 1331 and upon supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

## PROCEDURAL HISTORY

Plaintiffs filed this civil action against Pinkerton's, Inc. ("Pinkerton's") and Capital City Press on November 28, 2001, alleging that during and subsequent to Langley and Grimes' employment, the defendants were engaged in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e–2(a), Title 23 of the Louisiana Revised Statutes, and state anti-discrimination statutes, including but not limited to La.R.S. 23:332. Additionally, defendants' actions in transferring Langley were alleged to constitute retaliatory transfer and constructive discharge in violation of 42 U.S.C. § 2000e–3 et seq. and state statutes relevant to retaliatory transfer, retaliatory discharge, and wrongful termination including but not limited to La.R.S. 23:967 (doc. 1). Defendants' actions in discharging and/or terminating Grimes were alleged to constitute retaliatory discharge in violation of 42 U.S.C. § 2000e–3 et seq. and state statutes relevant to retaliatory discharge and wrongful termination, including but not limited to La.R.S. 23:967 (doc. 1).

Both petitioners claim to have suffered harassment, discrimination, and retaliation—Langley, while employed by Pinkerton's as security personnel assigned to

Capital City Press and Grimes, while employed by Capital City Press as a supervisor. Petitioners' allegations derive from inappropriate acts of Langley's supervisor and Pinkerton's site manager, Michael Price, who was assigned to Capital City Press' work site by Pinkerton's, his employer, in June 1997 (doc. 1).

Plaintiffs' complaint alleges that Pinkerton's had a contract with Capital City Press to provide security to the facility, and that both defendants were "employers" within the meaning and intent of federal and state law. The complaint alleges further that both defendants were co-employers or joint employers of Langley and Grimes (doc. 1).

After gaining knowledge that Langley's complaint was subject to Pinkerton's mandatory arbitration program, Capital City Press amended its answer to reflect such and to assert that her claims should, therefore, be dismissed (doc. 15). Langley and Grimes settled all claims between themselves and Pinkerton's and jointly moved on June 18, 2002, along with Pinkerton's, for partial dismissal of all claims against Pinkerton's, reserving claims against Capital City Press (doc. 26). This court granted the motion and dismissed Pinkerton's with prejudice (doc. 28), then later denied Capital City Press' motion to compel arbitration and to stay pending arbitration on the grounds that such would not be an optimum use of judicial resources under the particular circumstances then at hand (doc. 30).

Capital City Press now seeks to dismiss both plaintiffs' claims against it, pursuant to the Louisiana Employment Discrimination Law, La.R.S. 23:301, *et seq.* and the Louisiana Whistleblower Statute, La.R.S. 23:967, on the grounds that it was not Langley's employer as defined by the applicable statutes and, therefore, cannot be held liable for her alleged claims of sexual harassment and/or retaliatory discharge.

Pursuant to the Louisiana Employment Discrimination Law and the Louisiana Whistleblower Statute, defendant also seeks to dismiss both plaintiffs' claims on the grounds that they had prescribed by the time this suit was filed (doc. 31).

## UNDISPUTED FACTS

The following facts material to the motion now before the court are taken from the Statement of Uncontested Material Facts submitted by the defendant, Capital City Press:

1. In her complaint, Langley alleges that she "work[ed] a security detail at Capital City Press for Pinkerton," referring to Pinkerton's, whom she identifies as her employer.

2. Plaintiffs filed the instant action on November 28, 2001.

3. Plaintiffs allege in their complaint that Capital City Press violated Title VII of the Civil Rights Act of 1964, the Louisiana Employment Discrimination Law, La.R.S. 23:332, and "Louisiana statutes relevant to retaliatory transfer, retaliatory discharge, and wrongful termination, including but not limited to [the Louisiana Whistleblower Statute,] La.R.S. 23:967."

4. Langley alleges that Pinkerton's and Capital City Press were co-employers or joint employers, but does not allege that she received any compensation or benefits from Capital City Press in return for her services.

5. Capital City Press was not Langley's employer.

6. Capital City Press provided neither compensation nor benefits of any kind to Langley in return for her services.

7. Capital City Press did not withhold federal, state, unemployment, or social security taxes for Langley.

8. In Charges of Discrimination filed against Capital City Press with the Equal Employment Opportunity Commission ("EEOC"), Langley identifies the last date of alleged discrimination against her as August 20, 1999, the date she was transferred from Capital City Press' facilities, while Grimes identifies the last date of alleged discrimination as October 15, 1999, the date of her termination.

9. The EEOC issued plaintiffs their notices of right to sue on August 31, 2001.

The court notes here that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted, for the purposes of the motion, unless specifically denied." LR56.2M. The above facts have not been specifically denied by plaintiffs and are deemed admitted for purposes of this motion.

## ARGUMENTS

Capital City Press argues that Langley's failure to allege having received any compensation or benefits from Capital City Press in return for her services amounts to a failure to establish that Capital City Press was her employer within the meaning of the Louisiana statutes under which she sues. Specifically, Capital City Press turns the attention of the court to the affidavit of its Human Resources Director, Candace Knight, in which Knight declares Langley never to have been employed by Capital City Press, and that the defendant neither provided compensation or benefits to Langley, nor did it withhold federal, state, unemployment, or social security taxes for Langley.

Capital City Press argues further that both plaintiffs' claims are prescribed under Louisiana law. Langley filed a Charge of Discrimination with the EEOC against the defendant on May 19, 2000, identifying the last date of alleged discrimination as August 20, 1999, the date of her transfer. Grimes filed such Charge on September 15, 2000, identifying the last date of alleged discrimination as October 15, 1999, the date of her termination. On August 31, 2001, the EEOC issued plaintiffs their notices of right to sue. Capital City Press argues that, according to Louisiana law, the one-year prescriptive period applicable to employment discrimination claims is tolled only for the period of the EEOC's investigation, but for not for more than six months. An EEOC charge, according to the defendant, does not toll claims under the Louisiana Whistleblower Statute. Capital City Press' arguments are persuasive.

## LAW AND DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of asserting the basis of the motion and demonstrating the absence of a genuine issue of material fact; he need not negate the nonmovant's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069,-1075 (5th Cir.1994). Substantive law guides the determination as to which facts are material, and because the issues of material fact must be genuine, the presence of some alleged factual disputes, depending on what they are, will not neces-

sarily defeat the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Abbott v. Equity Group, Inc.,* 2 F.3d 613, 619 (5th Cir.1993), *cert. denied, Turnbull v. Home Ins. Co.,* 510 U.S. 1177, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994). The movant may discharge his burden by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554.

Once the movant discharges his burden, the nonmovant must highlight specific facts which demonstrate that there is a genuine issue of material fact, but he may not rely upon allegations or denials of his pleading. Fed.R.Civ.P 56(e); *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992), *cert. denied,* 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46. The nonmovant's "burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little,* 37 F.3d at 1075 (citations omitted). There is no genuine issue when the record could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Amoco Prod. Co. v. Horwell Energy, Inc.,* 969 F.2d 146, 148 (5th Cir. 1992). Stated differently, the nonmovant "need only present evidence from which a jury might return a verdict in his favor." *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514. Only then will a genuine issue be considered to exist. The court must resolve all factual inferences in favor of the nonmoving party, but only when the parties have each submitted contradictory factual evidence. *Little,* 37 F.3d at 1075.

In sum, summary judgment is mandated if the nonmovant fails to sufficiently establish the existence of an essential element of his case on which he bears the burden of proof, thereby dispensing with a genuine issue, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 322–323, 106 S.Ct. at 2552; *see Little,* 37 F.3d at 1075.

**Employment**

■ The court begins by noting that Capital City Press admits to being Grimes' employer (doc. 5). Langley's employment status alone is presently at issue. For purposes of the Louisiana Employment Discrimination Law, Chapter 3–A, and unless the content of another Subchapter clearly indicates otherwise, "employer" is defined as "a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state *receiving services from an employee and, in return, giving compensation of any kind to an employee.*" La.R.S. 23:302(2) (emphasis added).

Claims of intentional discrimination in employment are treated under La.R.S. 23:332 which is contained in Chapter 3–A. Sexual harassment claims have also been treated within the context of La.R.S. 23:332. *See Craven v. Universal Life Ins. Co.,* 95–1168 (La.App. 3 Cir. 3/6/96); 670 So.2d 1358, *writ denied,* 96–1332 (La.9/27/96); 679 So.2d 1355 (finding the existence of sexual harassment under La. R.S. 23:1006, which has since been repealed, but the substance of which is now contained in La.R.S. 23:332). There is no indication in La.R.S. 23:332 that "employer" should be defined any other way than as it is defined in La.R.S. 23:302(2).

In what the court refers to as the "Louisiana Whistleblower Statute," an employer may not take reprisal against its employ-

ees who directs attention to the employer's violations of law. La.R.S. 23:967. The Statute does not define "employer," and though it is found in Chapter 9 rather than in 3–A, courts have interpreted La.R.S. 23:302(2)'s definition of "employer" to apply. *Jackson v. Xavier Univ. of Louisiana,* 2002 WL 1482756 (E.D.La.2002) (citing *Jones v. JCC Holding Co.,* 2001 WL 537001 (E.D.La.2001)).

In light of La.R.S. 23:302(2)'s definition of "employer," the court is confident that Capital City Press was not Langley's employer, primarily because, according to both Knight's affidavit and Capital City Press' uncontested list of material facts, Langley was simply not employed by the defendant. Because this fact is deemed admitted, the court's inquiry should end here. The court adds, however, that the defendant provided neither compensation nor benefits to Langley, nor did it withhold federal, state, unemployment, or social security taxes for her. *See Onyeanusi v. Times–Picayune Publ'g. Corp.,* 485 So.2d 622 (La.App. 4 Cir.1986). These too are uncontested facts and are, therefore, deemed admitted. Though she performed a security detail at Capital City Press, Langley was an employee of Pinkerton's. Capital City Press cannot be held liable for Langley's alleged causes of action under Louisiana law made in connection with discrimination, sexual harassment, or retaliation.[1]

■ Plaintiffs' complaint alleges further that Pinkerton's and Capital City Press were co-employers or joint employers of petitioners. In Title VII cases, if distinct entities are found to represent a single, integrated enterprise or a single employer, then they may both be exposed to liability. *Trevino v. Celanese Corp.,* 701 F.2d 397, 404 (5th Cir.1983); *Schweitzer v. Advanced Telemarketing Corp.,* 104 F.3d 761, 763 (5th Cir.1997). Louisiana state courts have agreed. Considering Title VII's definition of "employer,"[2] the court in *Duplessis v. Warren Petroleum, Inc.,* 672 So.2d 1019, 95–1794, p. 7 (La.App. 4 Cir. 3/27/96); 672 So.2d 1019, 1023 explained that Title VII liability may attach to a defendant "joint employer" who does not share a traditional employment relationship with the plaintiff, but who controls certain aspects of the plaintiff's compensation, terms, conditions, or privileges.[3]

■ Though Louisiana's test for determining the existence of an employer-employee relationship relates to "right of control," the legislature has given "employer" a specific definition. This definition controls. *Duplessis,* 672 So.2d at 1023 (interpreting La.R.S. 23:1006, which has

---

1. Capital City Press' motion for partial summary judgment seeks only to dismiss Langley and Grimes' claims pursuant to the Louisiana Employment Discrimination Law and the Louisiana Whistleblower Statute. Because the defendant's motion does not seek to dismiss those claims alleging violations of Section 703(a) of Title VII, 42 U.S.C. § 2000e–2(a) and 2000e–3 *et seq.,* the court declines discussion of such claims for purposes of this motion.

2. For purposes of Subchapter VI of Chapter 21 of Title 42, "employer" is defined, in pertinent part, as "a person engaged in an industry affecting commerce who has fifteen or more employees...." 42 U.S.C. § 2000e(b).

This definition differs significantly from that contained in La.R.S. 23:302(2) since it does not limit liability to an employer who receives services *and* gives compensation to its employee.

3. Several tests have been jurisprudentially enunciated regarding the proper method of establishing the existence of joint employers in the Title VII context. *See Duplessis,* 672 So.2d at 1024 (citing *Nowlin v. Resolution Trust Corp.,* 33 F.3d 498 (5th Cir.1994)); *Schweitzer,* 104 F.3d. at 764; *Trevino,* 701 F.2d at 404. However, for purposes of this discussion of Louisiana state law and for reasons set forth herein, application of the proper Title VII test need not be made.

since been repealed, but the substance of which is now contained in La.R.S. 23:332). Because the term "employer" is precisely defined by the Louisiana Employment Discrimination Law to require receipt of services by the employee in exchange for compensation to him, the analysis for interpreting the term "employer" under Title VII is inapplicable. As such, the court finds no legal basis under Louisiana law for interpreting Capital City Press and Pinkerton's as joint employers, even though there may have been a contract between them. And though factual questions would more than likely exist as to whether Capital City Press and Pinkerton's were joint employers for purposes of Title VII, this partial summary judgment is not defeated by the presence of such questions, which are obviated by Capital City Press desire to dismiss only Langley's state law claims and not her Title VII claims.

**Prescription**

The chapter prohibiting discrimination in employment in Louisiana mandates that

[a]ny cause of action provided in this Chapter shall be subject to a prescriptive period of one year. However, this one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights. No suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than six months.

La.R.S. 3:303(D).

■■ There is no prescriptive period specifically set out within the Louisiana Whistleblower Statute. La.R.S. 23:967.

However, "[a]bsent any specification within La.R.S. 23:967, [the plaintiff's] cause of action thereunder is subject to the general one-year prescriptive period for delictual actions provided in La.C.C. art. 3492." *Nolan v. Jefferson Parish Hosp. Serv. Dist. No. 2,* 01-175, p. 12 (La.App. 5 Cir. 6/27/01); 790 So.2d 725, 733. Moreover, the court has found nothing to indicate that the Whistleblower Statute is suspended during any administrative review or investigation.

■ In determining the commencement date of the prescriptive period for these state claims, the court notes its reliance upon La.Civ.Code art. 3492, which reads in pertinent part: "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained."

The one-year prescriptive period on Langley's claims began to run on August 20, 1999, the date she identified on her Charge of Discrimination as the latest date the discrimination took place. The court finds this day to be that on which the injury or damage was sustained. Nearly nine months later, on May 19, 2000, she filed a Charge of Discrimination with the EEOC. The prescriptive period was then suspended (on claims other than the whistleblower claim) in accord with La.Civ. Code art. 3472.[4] The EEOC's issuance of plaintiffs' notices of right to sue occurred on August 31, 2001, approximately eighteen months after the Charge was filed. However, in accord with La.R.S. 303(D), prescription was only suspended for six of those eighteen months after the Charge was filed, namely, until November 2000. Prescription resumed running on that date, and the entire action prescribed ap-

---

4. La.Civ.Code art. 3472: "The period of suspension is not counted toward accrual of prescription. Prescription commences to run again upon the termination of the period of suspension."

proximately three months later, in February 2001. February 2001 was nine months before this lawsuit was filed on November 28, 2001.

■ Langley's claim under the Whistleblower Statute began to run in September 1999, the date she identified on her Charge of Discrimination as the date of her transfer. The court finds this day to be that on which the injury or damage was sustained. It prescribed in September 2000, more than one year before this lawsuit was filed on November 28, 2001.

■ The one-year prescriptive period on Grimes' claims began to run on October 15, 1999, the date she identified on her Charge of Discrimination as the latest date the discrimination took place. The court finds this day to be that on which the injury or damage was sustained. Because this fact is not specifically denied, it is deemed admitted. Exactly eleven months later, on September 15, 2000, she filed a Charge of Discrimination with the EEOC. The prescriptive period was then suspended (on claims other than the whistleblower claim) in accord with La.Civ.Code art. 3472. The EEOC's issuance of plaintiffs' notices of right to sue occurred on August 31, 2001, approximately eleven months after the Charge was filed. However, in accord with La.R.S. 303(D), prescription was only suspended for six of those eleven months after the Charge was filed, namely, until March 2001. Prescription resumed running on that date, and the entire action prescribed approximately one month later, in April 2001. April 2001 was seven months before this lawsuit was filed on November 28, 2001.

■ Grimes' claim under the Whistleblower Statute began to run on October 15, 1999, the date she identified on her Charge of Discrimination as the date of her termination. The court finds this day to be that on which the injury or damage was sustained. It prescribed in October 2000, more than one year before this lawsuit was filed on November 28, 2001.

Considering the foregoing, we agree with Capital City Press' argument that both Langley and Grimes' Louisiana state claims derived from all state anti-discrimination statues, including La.R.S. 23:332, as well as those claims derived from Louisiana state statutes relevant to retaliatory transfer, retaliatory discharge, and wrongful termination, including La.R.S. 23:967, were prescribed under Louisiana law when filed on November 28, 2001.

In accord with Fed.R.Civ.P. 56 and as guided by Louisiana substantive law, Capital City Press has successfully borne its burden of demonstrating the absence of a genuine issue of material fact.

## CONCLUSION

Accordingly, for the foregoing reasons, the motion by the defendant, Capital City Press, for partial summary judgment (doc. 31) is hereby **GRANTED** and judgment shall be entered in favor of Capital City Press, dismissing the Louisiana state law claims of Langley and Grimes, with prejudice, against said defendant.