PETTIGREW, J.
I ;>This is an appeal by the defendant, Willie Thomas (Mr. Thomas), from a money judgment rendered against him. The trial court ruled in favor of the plaintiffs, Sarah Johnson and her daughter, Mi’Chea-la Grant, for personal injuries. The injuries were sustained when a damaged ga *634 rage door to their home — leased from Mr. Thomas — fell on Mi’Cheala, and Ms. Johnson attempted to lift the fallen door from her. The door had been damaged during a hurricane six months earlier, and Mr. Thomas had not had it repaired. After a thorough review of the record and the arguments presented, we find no merit to Mr. Thomas’s arguments and affirm the judgment of the trial court.
BACKGROUND FACTS
The facts are essentially undisputed. The defendant, Mr. Thomas, who resided in California, owned a house at 1925 Monterrey Boulevard in Baton Rouge. He leased the house through DL Management, LLC, a property management company in Baton Rouge. In April 2008, Dana Littles, an employee of DL Management, as agent for Mr. Thomas, leased the house to the plaintiff, Sarah Johnson. She resided in the. house from April 2008 until approximately mid-2012, with her family, including her minor daughter, Mi’Cheala Grant, who suffers from physical and learning disabilities.[1]
Approximately five months after Ms. Johnson leased the house, Hurricane Gustav hit the Baton Rouge area, with high winds and fallen limbs causing damage to the garage door, as well as to the gutters and fence of the house at 1925 Monterrey Boulevard. According to Ms. Johnson, the winds caused the garage door to cave in, come off the hinges, leaving a large visible dent, and rendering it inoperable. She immediately telephoned the leasing agent, Dana Littles, and reported the hurricane damage to the house, particularly the damage to the garage door, together with her concerns that the door would fall.
[aA couple of days later, Ms. Littles went to the house to examine the damage. She took photographs and testified that she observed “a lot” of damage to the garage door, stating that it was up, but visibly dented and “jammed.” She, too, observed that it appeared that the door may fall. She immediately contacted Mr. Thomas about the damage, as well as the concerns she and Ms. Johnson had that the garage door may fall. Mr. Thomas asked her to send photographs and to also inquire about repair estimates. Ms. Littles testified that she did as Mr. Thomas requested, but that he never got back with her about repairs, and none were made.
A couple of weeks following the hurricane, the garage door shifted, causing Ms. Johnson more concern about its dangerous condition. (The record reveals that at that time, the house had only one other operable door from which to enter and exit the house.) Ms. Johnson again immediately contacted Ms. Littles about the shift in the door and her concerns. Ms. Littles again contacted Mr. Thomas and repeated the concerns that she and Ms. Johnson had that the door may fall. Again, Mr. Thomas did nothing.
Approximately six months later, on March 8, 2009, the incident giving rise to this litigation occurred. Ms. Johnson testified that during the early morning hours, while her family was getting dressed and ready for their day, she suddenly heard a “loud crash and a scream” and went running toward the sound. As she entered the garage, she saw Mi’Cheala lying on the ground, screaming, with the garage door on top of her body. Ms. Johnson testified that she, too, began screaming, and instinctively, ran to her daughter and tried to lift the door off of her. (She also testi *635 fied that she was unable to do so, as the door was “excruciatingly heavy.”) She called 911. When the ambulance arrived, the paramedics were able to lift the door off of Mi’Cheala, and they transported her and Ms. Johnson to the emergency room at the Baton Rouge General Medical Center.
Ms. Johnson testified that her daughter was in great pain, crying and screaming all the way to the hospital. At the hospital, Mi’Cheala complained of being in pain all over her body, particularly, in the neck and back area. She was given medication for pain and anxiety. X-rays were taken, which revealed no cervical or lumbar fractures. She was discharged, with muscle relaxer and anti-inflammatory prescriptions, and advised to follow |4up with her primary care physician in 3-5 days, or sooner, if her symptoms worsened. She was diagnosed with neck and back muscle spasms (“mild reversal of normal cervical lordosis”) and a deep contusion — tenderness and swelling in the soft tissue areas.
Ms. Johnson also testified that, a couple of days later, she realized that she, too, had sustained injury while trying to lift the garage door off of her daughter. She stated that she began having pain in her shoulders, back, neck, and head. Because her daughter was also still complaining of pain, they both went to the emergency room at Lane Regional Medical Center (Lane) in Zachary to be examined. Mi’Cheala presented with complaints of pain and soreness “all over” that had not improved and worsened with movement. She was diagnosed with muscle strain and prescribed Lortab for pain and the muscle relaxant, Flexeril.
Ms. Johnson was also examined and treated at the emergency room at Lane. She presented with complaints of acute pain in her back, particularly, the lower back, and right arm. She was also diagnosed with muscle strain, and treated with the same pain and muscle relaxant prescriptions as her daughter. Both she and her daughter were advised to follow up with their primary care physician.
The following week, on March 16, 2009, Ms. Johnson and Mi’Cheala went to their primary care physician, Dr. James Hines. Dr. Hines diagnosed Mi’Cheala with multiple soft tissue contusions, neck strain, and exacerbation of her asthma. He prescribed the anti-inflammatory, Mobic, and physical therapy twice a week. The record reveals that she received physical therapy for a little over three months, being discharged on June 25, 2009. Dr. Hines noted that although she was still complaining of pain at that time, he did not believe continuation of physical therapy would be of any help.
Dr. Hines also treated Ms. Johnson on March 16, 2009. Ms. Johnson complained of pain in her shoulders and arm, as well as neck and back pain. He noted she had shoulder and right forearm strain, cervical and lower back sprain, as well as multiple soft tissue injuries, which were caused by her attempts to lift the garage door off of her daughter. He. prescribed a steroid, anti-inflammatory and pain medications, as well as physical therapy. He also discontinued the physical therapy for Ms. Johnson after ^approximately three months, finding she had reached maximum medical improvement, albeit her complaints of continued pain. Ms. Johnson testified that she and her daughter both continue to suffer pain and soreness, and they treat that with over-the-counter ibuprofen.
PROCEDURAL HISTORY
On November 17, 2009, a petition for damages was filed, alleging that Mr. Thomas had knowledge of the condition of the damaged garage door and that he had received insurance proceeds to make re *636 pairs, but failed to do so. Mr. Thomas filed an answer, generally denying all allegations, and subsequently, filed a supplemental answer, alleging the comparative fault of the plaintiffs.
The matter proceeded to a bench trial, following which the trial court rendered judgment in favor of both plaintiffs, and against Mr. Thomas, finding that he knew of the damage to the garage door, as well as the danger it presented, yet failed to repair it in the six months that lapsed before the incident causing injury to these plaintiffs. The trial court found Mr. Thomas liable under La. C.C. art. 2696, for breaching the lessor’s warranty that the leased premises be suitable for the purposes of the lease and, that it be free from vices and defects. The trial court further found the plaintiffs to be free from fault.
The trial court additionally found the injuries sustained by both Mi’Cheala and her mother were caused by Mr. Thomas’s failure to repair the garage door, and awarded the following damages:
Sarah Johnson — medical special damages in the amount of $2,434.08; general damages in the amount of $5,000.00, for a total of $7,434.08; and Mi’Cheala Grant — medical special damages in the amount of $5,050.40; general damages in the amount of $8,000.00, for a total of $13,050.40.
Thus, the total amount of the money judgment against Mr. Thomas was $20,484.48, together with legal interest from the date of judicial demand, until paid in full, as well as all costs. Judgment was rendered in open court on August 9, 2012, and signed on August 22, 2012. This devolu-tive appeal by Mr. Thomas followed.
I ^ASSIGNMENT OF ERROR
Mr. Thomas asserts the trial court erred in ruling that he, the landlord, owed a duty to warn tenants, Mi’Cheala Grant: and Sarah Johnson, of an open and obvious dangerous condition. He additionally argues that the trial court erred in finding him to be 100 percent at fault and in not assessing any percentage of fault to the plaintiffs for the damages they sustained.
APPLICABLE LAW/DISCUSSION/ANALYSIS

Standard of Review

An appellate court’s review of factual findings is governed by the manifest error or clearly, wrong standard. Smith v. Louisiana Dept, of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129, 132. The two-part test for the appellate review of facts is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record establishes that the finding is not manifestly erroneous. See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trial court’s finding, no additional inquiry is necessary to conclude there was manifest error. However, if a reasonable factual basis exists, an appellate court may set aside a trial court’s factual finding only if, after reviewing the record in its entirety, it determines the trial court’s finding was clearly wrong. See Stobart v. State through Dept, of Transp. and Development, 617 So.2d 880, 882 (La.1993).

Open and Obvious Condition

We find Mr. Thomas’s arguments, based on general negligence principles and the assertion that the dangerous condition of the garage door was open and obvious, such that it was not unreasonably dangerous, are misplaced and, therefore, have no merit. Inasmuch as this is a suit by lessees against their lessor for injuries sustained on the leased premises, the codal *637 provisions governing a lessor’s warranties and liability pursuant thereto are applicable. See Tewis v. Zurich Insurance Company, 233 So.2d 357, 359 (La.App. 1 Cir.), writ denied, 256 La. 357, 236 So.2d 496 (1970). In determining the applicability of laws, it is axiomatic that the more specific governs over the more general. Because La. |7C.C. articles 2696 and 2697 specifically address lessor/lessee obligations and warranties, they are applicable under these circumstances. Thompson v. BGK Equities, Inc., 2004-2366 (La.App. 1 Cir. 11/4/05), 927 So.2d 351, 353-54, writ denied, 2005-2405 (La.3/17/06), 925 So.2d 550.

Lessor’s Liability

The lessor warrants the lessee that the thing is suitable for the purpose for which it was leased and that it is free of vices or defects that prevent its use for that purpose. This warranty also extends to vices or defects that arise after the delivery of the thing and are not attributable to the fault of the lessee. La. C.C. art. 2696. Moreover, this warranty also encompasses vices or defects that are not known to the lessor. La. C.C. art. 2697. Thus, the lessor is essentially strictly liable for vices and defects that cause harm to his lessee. See Wells v. Norris, 46,458 (La.App. 2 Cir. 8/10/11), 71 So.3d 1165, 1169, writ denied, 2011-1949 (La.11/18/11), 75 So.3d 465. However, that article also provides that if the lessee knows of such vices or defects and fails to notify the lessor, the lessee’s recovery for breach of warranty may be reduced accordingly. La. C.C. art. 2.697.

Burden of Proof

A tenant seeking damages for injuries alleged occasioned by a vice or defect in the leased premises bears the burden of establishing his claim to a legal certainty by a fair preponderance of the evidence. Tewis, 233 So.2d at 360. Knowledge alone on the part of the injured party that the premises were in a defective condition does not per se preclude his action for recovery of damages. Tewis, 233 So.2d at 360.

Application of Law to Evidence Presented

The plaintiffs established that Mr. Thomas’s agent and, through her, Mr. Thomas were both notified immediately after the garage door was damaged. Mr. Thomas was not only notified that it was damaged, but also about Ms. Johnson and Ms. Little’s well-founded concerns that the door may fall. Mr. Thomas failed to do anything. Weeks later, he again received notice that the danger presented by the garage door had heightened, as it had recently shifted. Still, Mr. Thomas took no action.
Approximately six months later, the garage door fell.
| sUnder these circumstances, there is more than a preponderance of evidence establishing that Mr. Thomas breached the statutory duty owed by him as lessor to repair the garage door and remove the unreasonably dangerous condition to which the plaintiffs (lessees) were subjected. Accordingly, there is no manifest error and the trial court’s judgment holding Mr. Thomas liable for the plaintiffs’ injuries caused by the fallen garage door is affirmed.

Comparative Fault

We also find the trial court did not commit manifest error in failing to assign any percentage of fault to the plaintiffs. Initially, we note that there is no evidence in the record that Mi’Cheala, a fifteen-year-old child with physical and learning disabilities, was aware of, or even capable of understanding the danger presented by *638 the garage door. Furthermore, the evidence established that there was only one other door — presumably the front door of the house — by which to access and egress the house. Ms. Johnson testified she herself, and others, based on her alerting them, were aware of the danger and did not purposely gain access to the house through the garage door; although, it was the most convenient access, and sometimes even without thinking, she would walk right out to her car when leaving the house.
Considering that the condition existed for a time period of at least six months, we find the trial court did not err in finding the actions of the plaintiffs reasonable and refusing to assign fault to them. In Terns, supra, this court affirmed a trial court’s judgment under similar circumstances which refused to find a plaintiff at fault when he took a more convenient route to his car in a parking lot, albeit claims that he knew this route contained an unreasonably dangerous condition, when the alternative route required him to take a different exit and going some additional thirty feet distance. 233 So.2d at 361. Although Tewis was decided under the assumption of risk/contributory negligence law which precluded recovery, we nonetheless find the same analysis and conclusion applicable under the comparative fault principles at issue in this case.
^CONCLUSION
For the foregoing reasons, we find the trial court committed no manifest error, and affirm its judgment. The defendant, Willie Thomas, is assessed with all costs of this appeal.
AFFIRMED.

. At the time of the incident at issue and when the petition in this matter was filed, Mi’Cheala Grant was a minor. She reached the age of majority during the litigation and was properly substituted as a plaintiff in her own right at that time.