GARRETT, J.
_JjThis suit arises from a collision wherein a propane gas delivery truck backed up and struck a vehicle driven by a postal worker who was delivering mail. The trial court granted the plaintiffs’ motion for partial summary judgment on the issue of liability. It ruled that the. propane gas truck driver was 100 percent at fault and the postal worker was free from any comparative fault. The defendants appeal-that judgment. We affirm the trial court judgment.
FACTUAL AND PROCEDURAL BACKGROUND
On December 23, 2009, Roger Moore (“Moore”) was driving a 2003 FRHT propane gas truck for his employer, O’Neal-gas, Inc., on Kenneth- Road, a two-way, unlined but paved country road in rural Bienville Parish-near Ringgold. Raymond Doyle Chanler, Jr. (“Chanler”), a United States Postal Service (USPS) mail carrier, was driving a 2004 Jeep Wrangler, which had a passenger-side steering, wheel (or. right-hand drive) to facilitate mail delivery and a flashing light affixed to the top of the vehicle. Moore drove past a driveway where he intended to turn for a home delivery. Realizing his' error, he placed his truck in reverse and began to back up. Chanler was in the Jeep delivering mail and was behind the truck. The truck collided with the .Jeep, sending it into a ditch.
On December 15, 2010, Chanler and his wife, Pamela Tanner Chanler, filed suit against Moore, O’Nealgas, and its insurer, Jamestown Insurance Company (“Jamestown”). The plaintiffs alleged that Chanler Sustained a severe lower back injury which required surgery and prevented him from returning to his job. They claimed that his medical bills already exceeded $100,000. The plaintiffs demanded general and special damages, Land Chanler’s wife sought damages for loss of consortium. The defendants answered and asserted defenses of comparative fault, sudden emergency, and act of God.
In November 2012, the defendants filed a notice of automatic stay, informing the court that Jamestown, a risk, retention *618 group, had been placed in receivership in a South Carolina state court and that an automatic stay was in place. After the company commenced liquidation proceedings, the South Carolina court issued an order clarifying that the stay did not apply to pending claims against third parties. Consequently, in June 2013, the Louisiana trial court signed a judgment holding that the stay order was not applicable to O’Nealgas and Moore and that the plaintiffs could proceed against these two defendants.
. In December 2013, the plaintiffs filed a motion for partial summary judgment on the issue of liability alone. In support of their motion, they submitted several affidavits, including three from witnesses to the accident—David Reliford, Barbara Re-liford, and Barbara’s daughter, Ashley Chase. In their March 2012 affidavits, all of these witnesses stated that the truck backed up into the Jeep and slammed it into a ditch and that the truck driver should have seen the Jeep, especially after it began blowing its horn. Chase stated that she jumped from her vehicle and ran up to the truck, waving her arms and trying to get the truck driver to stop. Chase said she assumed the Jeep was in the truck’s blind spot, but there was a flashing light on top of the Jeep. Both of the Relifords stated that they observed Chase yelling at the truck driver to stop and that the truck driver apparently failed to see her. Ms. Reliford stated that she also waved her hands and hollered at the driver to stop. The Relifords also stated that, even after impact, the truck kept going, Ispushing the Jeep until it was knocked into a ditch. In her affidavit, Tam-bra Manuel, the Ringgold postmaster, stated that she immediately went to the crash scene after she was notified about the accident. In front of her and Chanler, the truck driver said, “I am so sorry. I didn’t see him and I hit him.” In his affidavit, Larry Loudd, a Bienville Parish deputy sheriff who investigated the accident, said that Moore gave him a statement in which he recounted: “I ... decided to back-up to the drive I was at, did not see mail carrier, hit his Jeep and knocked him into ditch.”
O’Nealgas and Moore opposed the motion on the grounds that there were disputed material facts as to whether Chanler failed to do all he reasonably could have to avoid contact with the truck, whether he negligently stopped in Moore’s blind spot or was too close, and whether he should have recognized that the truck driver might be stopping and backing up. In support of their position, they submitted Moore’s affidavit in which he stated that he backed up at no more than 5 mph and saw nothing in his rearview mirror on his side of the truck. He admitted seeing a woman “waving her arms and trying to say something maybe, but I had no idea what she was doing it for.” He said he braked anyway, felt an impact, and stopped completely. He then asserted that he realized he had not seen the vehicle because it was too close behind him to be seen in the mirror. He further stated that he said he was at fault to make the “nervous and anxious” Jeep driver “feel better.” Moore also stated that he told the police that he did not hear a horn blow or see any evidence of the vehicle behind him, such as a flashing light on its roof. He also asserted that he was sure the Jeep was too close to him for him to see it and that the other driver could have simply put his vehicle into reverse and “easily backed up faster than I did.”
LAdditionally, the defendants attached an excerpt from Chanter’s deposition in which he recounted the accident. Specifically, he stated that, after he came around a curve in the road, he stopped when he saw the truck, which was half in the road and half in a driveway. According to Chan- *619 ler, the truck was perpendicular to the road. Chanler had been driving about 35 mph and stopped about 75 to 80 yards from the truck. After pulling out of the driveway, the truck moved away from Chanler, who proceeded to service a. mailbox. When the truck was about 100 to 120 feet[1] away from him, it stopped again after passing a driveway. When Chanler was about 50 feet behind him, the truck began backing up, first slowly, and then the truck driver “gunned it.” Chanler said he started honking his horn and flashing his lights. At this point, the truck was about 35 to 40 feet away. He then put his car in reverse to try to get out of the way. At this point, the truck was about 30 feet away; Chanler said he thought the truck was going to stop and back into the driveway. However, instead of slowing down, the truck picked up speed. He also observed two ladies in a nearby yard screaming at the truck driver to stop. He was only able to back up “a yard or two” before the truck hit him. The force of the collision drove the bumper into the Jeep motor, killing the engine and causing a complete loss of control. Chanler said he put both feet on the brake to try to stop. When the truck driver finally saw what had happened, he braked, which pushed the vehicles apart. Chanter’s vehicle stopped when it went in the ditch. According to Chanter, it had just stopped raining, and he had his regular car lights on.
|BThe motion for partial summary judgment was originally set for hearing in court on January 9,2014. It was later reset for October 23, 2014. Shortly before the hearing date, the defendants submitted an affidavit from Daniel Emory dated October 10, 2014. Emory, an adjuster for Crawford & Company, claimed to have interviewed Chase by telephone on July 20, 2010. He stated that “the gist” of the interview was that Chanter had “plenty of time to back up to avoid danger” and that he was in Moore’s blind Spot. He also stated that Chase’s recorded interview differed from her affidavit which was submitted to support the plaintiffs’ motion for partial summary judgment. Also submitted were a CD audio recording and what purported to be a 9-page transcript of the interview with Chase.[2] According to this transcript, she said she was behind the vehicles involved in the accident. She said the truck driver was lost and the mailman was in the truck driver’s blind spot and “right there on his bumper.” Realizing what was about to happen, she pulled in her mother’s driveway and jumped out of her car to let the truck driver know he was about to back into the mailman. According to her, the truck driver was trying to make a delivery at her mother’s house and passed the driveway. She opined that the mailman had time to back up before the collision. She said the truck driver could not hear her yelling at him because his windows were up, but she did not know why he did not see her in his mirror. She thought the distance between the vehicles was one-half of a car length when the truck began backing up. She stated that the mailman began honking his horn when “it was too late” and that he made no attempt to back up. In her opinion, the accident could have been prevented.
RAt the hearing on October 23, 2014, the trial court noted on the record that the case setting had been left off the docket and that it had just received copies of the motion and the opposition that morning. The trial court agreed to hear arguments *620 and advised the attorneys the matter would be taken under advisement. The plaintiffs strenuously objected to the Emory affidavit and the transcript as inadmissible summary judgment evidence. The trial court gave the attorneys the opportunity to submit additional memorandums on the issues raised during argument. In a post-hearing brief, the plaintiffs again objected to the admissibility of the evidence. On December 22, 2014, the trial court issued extremely brief written reasons denying the partial summary judgment. It did not specifically address the plaintiffs’ objections to the defendants’ evidence,[3]
On February 26, 2016, the plaintiffs filed another motion for partial summary judgment, reurging the same contentions as the previous one. In addition to all the exhibits previously submitted, they submitted a more detailed affidavit from Manuel and an affidavit from Chanler. Most significantly, they submitted excerpts from Moore’s deposition, which had been taken after the denial of the first motion. In her affidavit, Manuel stated that the USPS has a safety policy to back up a vehicle only when | ./‘absolutely necessary” and that she could attest Chanler had been instructed in accordance with this policy.[4] ■
In his deposition, Moore stated that he was backing up in the center of the road at a speed of 6 to 8 or 10 mph, except when he “froze up” while watching a lady waving at him. He said he didn’t know what was happening and he “bumped” the accelerator when he tried to hit the brake and missed. He explained that, in addition to rearview mirrors on both sides of the truck, he also had blind-spot mirrors that allowed him to see vehicles in his blind spots. He further admitted that, if he had looked in all of those mirrors, “[pjossibly, yes,” he should have been able to see the postal vehicle. He conceded that he did not look in the passenger-side mirror or the blind-spot mirror on that side. He said that he told the police the truth that day when he said that he did not see the mail carrier, hit his Jeep and knocked him into the ditch. He thought he pushed the Jeep “[mjaybe 20 feet or something like that” and that the vehicles were only a foot or two apart when he got out of his truck. He admitted that he never saw the Jeep until after the collision. When asked if he was informed that he was not supposed to back up on a. roadway when he took the test for his commercial driver’s license, he said “I guess so, yeah.” As to O’Nealgas’s policy, he said that drivers have “to make sure everything is clear-behind us when we back up.” Although he was aware that the witnesses heard Chanler honk.his horn, he said he did not | shear it. He only saw one of the ladies in the yard waving at him, but he did not hear her yelling. He thought 'she was trying to alert him to an emergency. Two or three seconds after he saw her, *621 he accidentally tapped the accelerator. He also admitted that one reason he didn’t hear her yelling could have been his radio. Moore further admitted that he was momentarily distracted due to disorientation about where he was. He stated that he “glanced” at his driver’s side rearview mirror, but “[m]y mind was making sure I got to the right customer, and everything else was blocked out.” He conceded that it would have been reasonable for the mail carrier to assume that: (1) he could hear the horn being honked, (2) he was backing up to then pull forward into one of the driveways, and '(3) he was going to stop before impact due to the horn, the flashing light on the Jeep, and the hollering of the ladies to stop. He admitted making the statement to the police that was recounted by the postmaster. He was unable to say how much time Chanler had to react. He said that propane gas is considered a hazardous material.
In his affidavit, Chanler explained that, due to the right-hand drive of the Jeep and its passenger-side steering wheel, he was seated on the passenger side of the Jeep. He could clearly see Moore’s face in the truck’s passenger-side mirror, which demonstrated that he was not in the truck’s blind spot and that Moore could have seen him if he had looked. He described the collision, including the truck slowly backing up and then unexpectedly accelerating backwards, colliding with the Jeep seconds later. Chanler stated that he flashed his headlights and honked his horn. He stated that he and Manuel both heard the truck driver admit that he did not sqe Chanler. Like Manuel, he also stated that the USPS safety policy specified that a postal vehicle should be backed up only when “absolutely necessary.” [¡¡He further stated that he believed the truck would stop before hitting him due to the flashing light,, the honking horn, and the woman waving and screaming at the truck driver.
O’Nealgas and Moore opposed the second motion for partial summary judgment and relied upon the same exhibits previously submitted in their opposition to the first motion.
At the hearing on April 7, 2016, the matter was argued before a different trial judge.[5] All of the plaintiffs’ exhibits were admitted without objection. The plaintiffs informed the court that, while Jamestown had taken bankruptcy, there was an excess umbrella policy available, but the other side refused to negotiate any settlement until there was a finding of liability. They emphasized the new and “very candid” admissions in Moore’s deposition, which was taken after the denial of the prior motion. Among these were his statements that he failed to look in his mirrors before backing up and that he accidentally hit the accelerator when he tried to stop. The plaintiffs again strenuously objected to the “double hearsay” in Emory’s affidavit and the unsworn telephone interview with Chase. They maintained that the defendants had had more than enough time to correct the deficiencies in their evidence by deposing Chase or securing an affidavit from her, but they failed to do so. The attorney for O’Nealgas and Moore objected to allegedly conclusory statements in the plaintiffs’ affidavits and argued that there were disputed issues of material fact as to comparative fault. They also asserted that the principle of “law of the case” should apply | ^because the prior judge denied the motion due to the Emory affidavit and the Chase telephone interview.
*622 The trial court granted the motion for partial summary judgment and assigned oral reasons for so ruling. In particular, the trial court noted that the judge who previously denied the motion did not have the benefit of Moore’s “telling” and “very strong” deposition, which overwhelmingly showed that there was no genuine issue of material fact as to fault. The court also noted the hearsay issue; it stated that Chase’s statement to Emory should not be considered in this case. Further, the court indicated that defense counsel had ample time to address and correct the problems with the inadmissible evidence and failed to do so.
Judgment was signed on April 27, 2016. It specified that O’Nealgas and Moore were solely at fault, precluding any finding of comparative fault on Chanler’s part. O’Nealgas and Moore appealed.[6]
LAW

Summary Judgment

Appellate courts review motions for summary judgment de novo, using the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Peironnet v. Matador Res. Co., 2012-2292 (La. 6/28/13), 144 So.3d 791.
The motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Schultz v. Guoth, 2010-0343 (La. 1/19/11), 57 So.3d 1002; Samaha v. Rau, 2007-1726 (La. 2/26/08), 977 So.2d 880. The procedure is lufavored and shall be construed to secure the just, speedy, and inexpensive determination of actions. La. C:C.P. art. 966 (A)(2).
A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 (A)(3).[7] The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966 (A)(4).
A fact is material if it potentially ensures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Jackson v. City of New Orleans, 2012-2742 (La. 1/28/14), 144 So.3d 876, cert. denied, — U.S. —, 135 S.Ct. 197, 190 L.Ed.2d 130 (2014). In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony or weigh evidence. Tatum v. Shroff, 49,518 (La.App. 2 Cir. 11/19/14), 153 So.3d 561.
The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover’s burden on the motion |12does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court the absence of *623 factual support for one or more elements essential to the adverse party’s claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of lav?. La. C.C.P. art. 966 (D)(1).
The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider. La. C.C.P. art. 966 (D)(2).
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. La. C.C.P. art. 967 (A). Unsworn or unverified documents are not self-proving and will not be considered on summary judgment. Harris v. Dunn, 45,619 (La. App. 2 Cir. 9/22/10), 48 So.3d 367. It is insufficient for an affiant to merely declare that he has personal knowledge of a fact. The affidavit must affirmatively establish that the affiant is competent to testify as to the matter by a factual averment showing how he came by the 1 ^knowledge. Duplessis v. Warren Petroleum, Inc., 95-1794 (La.App. 4 Cir. 3/27/96), 672 So.2d 1019.
Personal knowledge means something which a witness actually saw or heard, as distinguished from something a witness learned from some other person or source. THH Properties Ltd. P’ship v. Hill, 41,038 (La.App. 2 Cir. 6/2/06), 930 So.2d 1214; Rodessa Oil & Land Co. v. Perkins, 47,378 (La.App. 2 Cir. 8/8/12), 104 So.3d 52. Put another way, personal knowledge is that information which is obtained by the affiant through the use of his or her senses. Crawford v. Brookshire Grocery Co., 50,151 (La.App. 2 Cir. 9/30/15), 180 So.3d 478. The court must first determine whether the supporting affidavits and documents presented by the moving party are sufficient to resolve all material issues of fact. If they are not sufficient, summary judgment is not appropriate. THH Properties Ltd. P’ship v. Hill, supra. Portions of affidavits not based on personal knowledge of the affiant should not be considered by the trial court in deciding a motion for summary judgment. Crawford v. Brookshire Grocery Co., supra.
An affidavit in opposition which contains hearsay statements and is aimed at impeaching the credibility of the mover’s affidavit does not create a material issue of fact to defeat summary judgment. Cutler v. McGee, 2012-317 (La.App. 3 Cir. 11/14/12), 103 So.3d 1215; Butzman v. Louisiana Power & Light Co., 96-2073 (La.App. 4 Cir. 4/30/97), 694 So.2d 514; Duplessis v. Warren Petroleum, Inc., supra.
A trial judge cannot make credibility determinations on a motion for summary judgment. Independent Fire Ins. Co. v. Sunbeam Corp., 1999-2181 (La. 2/29/00), 755 So.2d 226; DeBrun v. Tumbleweeds Gymnastics, Inc., 39,499 (La.App. 2 Cir. 4/6/05), 900 So.2d 253. Summary judgment is seldom appropriate when the particular circumstances of the case call for credibility evaluations and the weighing of testimony. Cook v. Depingre, 49,527 (La.App. 2 Cir. 1/14/15), 161 So.3d 914. The credibility *624 of a witness is a question of fact, Sonnier v. Gordon, 50,513 (La.App. 2 Cir. 4/13/16), 194 So.3d 47. In deciding - a motion for summary judgment, the court must assume that all of the affiants are credible. Sonnier v. Gordon, supra; Tatum v. Shroff, supra.

Liability of Backing Motorist

Backing an automobile is considered a dangerous maneuver. Rodrigue v. Firestone Tire & Rubber Co., 540 So.2d 477 (La. App. 1 Cir. 1989), writs denied, 546 So.2d 179, 180 (La. 1989). The driver of a vehicle shall not back the same .unless such movement can be made with reasonable safety and without interfering .with other traffic. La. R.S. 32:281(A). A high degree of care is generally imposed upon backing motorists to ensure that the maneuver can be safely accomplished. Harrisson v. Richardson, 35,512 (La.App. 2 Cir. 1/23/02), 806 So.2d 954. The limitation of driver visibility while backing an automobile is a reason for the increased standard of care. Rodrigue v. Firestone Tire & Rubber Co., supra.
If a motorist fails to see what he should have seen, then the law charges him with having seen what he should have seen, and the court examines his subsequent conduct on the premise that he did see what he should have seen. Fontenot v. Patterson Ins. 2009-0669 (La. 10/20/09), 23 So.3d 259; Burdine v. Robertson, 46,213 (La.App. 2 Cir. 5/18/11), 69 So.3d 510.
ImThe jurisprudence has recognized that a professional truck driver is a superior actor in the eyes of the law and, as such, is held to a high standard, of care to the motoring public, Davis v. Witt, 2002-3102 (La. 7/2/03), 851 So.2d 1119; Theriot v. Bergeron, 2005-1225 (La.App. 1 Cir. 6/21/06), 939 So.2d 379.
. Sudden Emergency
Under the sudden emergency doctrine, anyone who finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or the best means to adopt in order to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to be the better method, unless the emergency is brought about by his own negligence. Therefore, where no facts aré in dispute, summary judgment may be appropriate where a sudden emergency renders an accident unavoidable. Jimes v. Lopez, 45,922 (La.App. 2 Cir. 1/26/11), 57 So.3d 1118; Loyd v. Lancer Ins. Co., 43,859 (La.App. 2 Cir. 1/14/09), 999 So.2d 1232.

Law of the Case

The “law of the case” principle is a discretionary guide which relates to (a) the binding force of a trial judge’s ruling during the later stages of trial; (b) the conclusive effects of appellate rulings at trial on remand; and (c) the rule that an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. Welch v. Willis-Knighton Pierremont, 45,554 (La.App. 2 Cir. 11/17/10), 56 So.3d 242, writs denied 2011-0075, 20110109 (La. 2/25/11), 58 So.3d 457, 459; Webb Const., Inc. v. City of Shreveport, 33,645 (La.App. 2 Cir. 8/23/00), 766 So.2d 607, writ denied, 2000-2674 (La. 11/17/00), 774 So.2d 982. Reargument in the same Incase of a previously decided point will be barred where there is simply a doubt as to the correctness of the eárlier ruling.' However, the law of the case princi-pié is not applied in cases of palpable error or where, if the law of -the case were applied, manifest injustice would occur. Northeast Realty v. Jackson, 36,276 (La, *625 App. 2 Cir. 8/14/02), 824 So.2d 1264; Webb Const. Inc. v. City of Shreveport, supra.
The reasons for the law of the case doctrine are: to avoid relitigation of the same issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. Welch v. Willis-Knighton Pierre-mont, supra; Northeast Realty v. Jackson, supra.
The jurisprudence has consistently found no error in a second motion for summary judgment being heard after the previous motion was denied. Watkins v. City of Shreveport, 45,107 (La.App. 2 Cir. 3/3/10), 32 So.3d 346; Rogers v. Horseshoe Entm’t, 32,800 (La.App. 2 Cir. 8/1/00), 766 So.2d 595, writs denied, 2000-2894, 20002905 (La. 12/8/00), 776 So.2d 463, 464. When new evidence has been introduced after a denial of a motion for summary judgment, the court may reconsider the motion. Watkins v. City of Shreveport, supra.
DISCUSSION

Emory affidavit

In opposition to the plaintiffs’ motion for summary judgment, the appellants rely upon an affidavit by an insurance adjustor, Emory, who asserted that he interviewed Chase over the telephone -in July 2010 and that she allegedly made statements which contradicted her March 2012 affidavit. At the hearing before Judge Teat in October 2014, the appellants contended [17that, while there might be “technically speaking a hearsay objection” to the Emory affidavit, it was only trying to establish that Chase’s alleged statement was made, not the truthfulness of its contents, At the April 2016 hearing before Judge Fallin, the appellants argued that, under the law of the case, Judge Fallin was bound by Judge Teat’s .finding that Chase’s affidavit and the transcript of the recording established enough dispute to defeat the motion. However, Judge Fallin agreed with the plaintiffs’ argument that the appellants were attempting to bring in inadmissible hearsay through Emory’s affidavit and the Chase transcript and that such should not be considered in the instant case.
We agree with Judge Fallin’s conclusion on this issue. First, the law of the case doctrine was inapplicable. Judge Teat never specifically ruled on the plaintiffs’ objections to the admissibility of the evidence. Assuming the brief and terse ruling on the first motion could be construed as a denial of the plaintiffs’ objections, such a ruling was palpable error. Further, the introduction by the plaintiffs of vital new evidence, i.e., Moore’s deposition with its devastating admissions, compels a finding that Moore was 100 percent at fault!
Additionally, as previously stated, an affidavit in opposition, which contains, hearsay statements and is aimed at impeaching the credibility of. the mover’s affidavit does not create a material issue of fact to defeat summary judgment..Cutler, supra; Butz-man, supra-, Duplessis,. supra. The appellants. were plainly attempting, to use the Emory affidavit, with its hearsay statements, to impeach Chase’s affidavit in support of the plaintiffs’ motion for partial summary judgment,. See Pierre-Ancar v. Browne-McHardy Clinic, 2000-2409 (La. App. 4 Cir. 1/16/02), 807 So.2d 344, writ denied, 2002-0509 (La. 4/26/02), 814 So.2d 558, wherein the court found that an unsworn transcript of a conversation submitted with an opposition affidavit did not constitute competent evidence to refute a properly supported summary judgment motion. See also Ross v. Oceans Behavioral Hosp. of Greater New Orleans, 14-368 *626 (La.App. 5 Cir. 11/25/14), 165 So.3d 176, writ not cons’d, 2015-0005 (La. 3/27/15), 161 So.3d 648, wherein a court deciding a motion for summary judgment excluded affidavits containing hearsay, and State Farm Mut. Auto. Ins. Co. v. Landry, 96-331 (La.App. 3 Cir. 10/9/96), 688 So.2d 1125, wherein the affidavit of an insurance company employee, to which a transcript of a purported telephone conversation was attached, was found not to comply with La. C.C.P. art. 967 because it was not based on personal knowledge and did not affirmatively show that the affiant was competent to testify to the matters stated therein.
In addition to the impermissible use of hearsay, the affidavit has other glaring deficiencies. Emory’s purported certification language is, at best, confusing. He attested that he had listened to the audio recording of the interview, read the transcript, and recognized his voice and that of the witness. He then stated, “I can and do certify that it is a true and correct copy of the original, which is archived in the records of [his employer].” As noted by the plaintiffs, it appears that Emory may have inadvertently certified that the transcript he offered matched an archived transcript, instead of verifying that the transcript was identical to the recording. Thereafter, Emory recited “the gist” of Chase’s interview and declared that he had read her affidavit and that its contents did not agree with her recorded and transcribed interview. Attached to the affidavit are nine typed pages of what purported to be a telephone interview with Chase. Interestingly, what |1flappears to be the first page of this document is actually numbered as “-2-.” Some page numbers are located in the text, not at the end of the page. On two pages, there are blanks, indicating incomplete transcription. There is nothing to indicate that Chase was sworn or placed under oath. Nor is there any sworn certification by the unknown person who transcribed the interview, verifying its accuracy.
The ruling below, that the Emory affidavit and the Chase interview transcript were inadmissible for purposes of a summary judgment, was correct. Consequently, we will not consider the inadmissible evidence while conducting our de novo review of the motion for partial summary judgment.

Alleged conflict between Moore’s affidavit and deposition

The appellants contend that the trial court made a credibility call by choosing to believe Moore’s deposition, in which he made numerous admissions to their detriment, over his affidavit, which attempted to cast fault for the accident upon the other driver.
Pursuant to our de novo review, we have examined Moore’s affidavit and deposition excerpts in great detail. The affidavit contains a number of conelusory statements, most of which concern Moore’s opinion that the Jeep must have been following too closely and that the other driver must have somehow shared fault in causing the accident. Such bald-faced assertions, which are mere opinion by a nonexpert and not “personal knowledge,” cannot be considered by the court in determining whether to grant summary judgment.[8] Factually, the affidavit refers to Moore looking at his “rear view | gnmirror on my side of the truck” and seeing nothing behind him. He then stated that he hit a Jeep “that did not show up in *627 my outside rear view mirror.” The affidavit omits any reference to his passenger-side rearview mirror or the blind-spot mirrors on both sides, much less Moore’s failure to utilize them in ascertaining the safety of his backing maneuver. Most importantly, the affidavit also conspicuously omits any reference to the highly salient admission in Moore’s subsequent deposition that he missed the brake and accidentally “bumped” the accelerator immediately before the collision. Those matters are described in some detail in the deposition excerpts. Therein Moore admitted that the blind-spot mirrors allowed him to see vehicles in his blind spot and that he failed to look in either the passenger-side rearview mirror or the blind-spot mirror on that side.
Moore’s affidavit is noteworthy for its many omissions. However, after examining the documents side by side, we find no actual conflict between the facts asserted in Moore’s affidavit and those set forth in his deposition. Consequently, it cannot be said that any credibility determination between them is necessary.

Liability

Pursuant to our de novo review, we have considered the documents properly submitted both for and against summary judgment. In instances where the witnesses (none of whom are experts) have opined about legal issues of liability, we have disregarded those opinions and considered only the facts established by and based upon their personal knowledge.
121 All of the evidence submitted showed irrefutably that Moore violated the high duty of care imposed upon a driver backing up a motor vehicle. Furthermore, as a professional truck driver, Moore was held to a high standard of care to the motoring public. By his own admission in his deposition, he failed to utilize the tools at his disposal, i.e., the passenger-side rearview and blind-spot mirrors, to determine if it was safe to execute this highly dangerous maneuver. The danger of this movement was increased substantially by the fact that Moore’s vehicle was a truck carrying a hazardous material. Furthermore, instead of applying his brakes immediately when he saw a woman waving and screaming obviously to alert him to an emergency, he accidentally “bumped” the accelerator, propelling the truck laden with propane gas backwards into the front of Chanler’s Jeep.
Under the circumstances of this case, we further find that Chanler cannot be assessed with any comparative fault in causing the collision. He was faced with a sudden emergency not of his own making. He was driving a mail delivery vehicle with a flashing light on top. Chanler thought that the propane truck had driven past a customer’s driveway and was backing up a short distance so it could then stop and pull forward. When he realized that the propane truck was backing up in his direction, Chanler blew his horn and flashed his headlights. While the truck initially moved slowly, it suddenly accelerated backwards. Chanler attempted to put his Jeep in reverse but was unable to retreat more than a yard or two before the impact. Chanler had the right to reasonably assume that Moore was going to stop the propane truck before impact due to the honking horn, the flashing light on top of the Jeep, and the hand waving and screaming of at least one woman trying to warn him of the imminent danger. Furthermore, Chanler stated that he could see | gaMoore’s face in the truck’s passenger-side mirror, which indicated that Moore likewise had the ability to see him. Chanler can scarcely be faulted for not realizing that, despite all of these many warnings and the presence of the truck’s mirrors, *628 Moore remained completely oblivious to his presence.
Based upon our de novo review, we conclude that there is no possible finding of any liability on Ghanler’s part. The Moore deposition clearly establishes that all of the fault was attributable to Moore. Chan-ler was presented with a sudden emergency situation created solely by Moore. As a matter of law, Chanler is not at fault. See Loyd v. Lancer Ins. Co., supra. As a result, we find that partial summary judgment on the issue of liability in favor of the plaintiffs is appropriate. Accordingly, we affirm the trial court judgment.
CONCLUSION
The trial court judgment granting partial summary judgment on the issue of liability in favor of the plaintiffs is affirmed. Costs in this court are assessed to the appellants, O’Nealgas, Inc., and Roger Moore.
AFFIRMED.
APPLICATION FOR REHEARING
Before WILLIAMS, DREW, PITMAN, GARRETT and STONE, JJ.
Rehearing denied.

. Although the deposition originally said "yards,” Chanler subsequently corrected it to “feet” when he reviewed it.

. The CD was not included in the appellate record.

. The court’s reasons for judgment consisted of the following:
The Court has reviewed the record, memorandums filed, along with the evidence and it is this Court’s opinion that the Motion for Partial Summary Judgment should be DENIED in that there are genuine issues of material fact including but not limited to the following:
A. The disputed affidavit and recording of Ashley Chase;
B. The affidavit of Daniel Emoty[.]

. In relevant part, the policy states:
BACKING ONLY WHEN ABSOLUTELY NECESSARY
Postal Drivers should never place a vehicle in a position where backing will be required unless there is no alternative. If a stopped vehicle places you in a position requiring backing, you must: Turn off the engine, get out; walk back; check not only the area immediately behind, but the entire area you plan to use; return to your vehicle and do your backing before the situation changes.

. While Judge Jimmy Teat heard the first motion, Judge Glenn Fallin presided over the second one.

. Hereinafter, O’Nealgas and Moore will be referred to collectively as "the appellants.”

. La. C.C.P. art. 966 was amended in 2015, and the amendment became effective on January l, 2016, The second motion for partial summary judgment was filed and heard after the effective date.

. An example of these statements is as follows:
"I am sure the Jeep was too close to me to be seen by me and as I backed up slowly, it could have simply shifted in to reverse and easily backed up faster than I did... I am truly sorry it happened, but I do not believe the Jeep driver did what he could have done to avoid the accident, once he stopped so close to me.