BLEICH, J. (Ad Hoc )
This action arises as the result of personal property damage, and other contractual issues, caused when plaintiffs' leased residence flooded. Plaintiffs appeal a summary judgment granted in favor of the defendant landlord. Finding that material issues of fact remain, we reverse and remand.
FACTS
On December 29, 2015, Gaitano Milazzo leased an unfurnished residence from Douglas Randall Harvey ("Harvey"), the owner of the house located on Auburn Avenue in Monroe, Louisiana. The lease was for a period of two years, beginning January 3, 2016. Milazzo, his wife Pamela, and members of his immediate and extended family (collectively "Milazzo"), also resided in the residence.[1] On the evening of March 8, 2016, rain began to fall in the Monroe area, and in the early morning hours of March 9, 2016, the rental house experienced flooding that caused Milazzo to notify Harvey and immediately evacuate. By 7:00 a.m., Harvey visited the house when the rain subsided and the flood waters had receded, to allegedly photograph damage caused to the residence by the flooding. The rain began to fall again and continued for the following two days. Eventually the house flooded a second time with approximately 11 inches of rain. The total four-day rain event caused historic flooding in the Monroe area, known as the "thousand year flood."
On April 14, 2016, Milazzo filed suit against Harvey and his public liability insurer, Shelter Mutual Insurance Company ("Shelter"),[2] seeking personal property *349 loss damages on the grounds that Harvey breached the lessor's warranties of habitability and peaceful possession by failing to disclose that the residence was flood prone. Milazzo also raised claims of breach of the lease obligation by Harvey for his unauthorized entry into the home to take photographs, Harvey's bad faith for failure to disclose the defects at the time of leasing and unfair trade practices. Milazzo sought refund of all payments made in connection with the residence, compensation for out-of-pocket expenses and for loss of use and time, inconvenience, aggravation, mental distress and attorney fees.
On September 22, 2016, Harvey and Shelter moved for summary judgment on the grounds that Milazzo's damage was caused by an act of God or force majeure (the "thousand year flood") which precluded any recovery. Harvey conceded that an issue of fact remained as to whether Milazzo should have been informed of previous flooding claims made in connection with the house, but argued that this fact was not material because the historic flood caused Milazzo's damage. Several documents were submitted by Harvey in support of summary judgment. Those included the affidavit of Archie Neal Brown, Director of the Ouachita Parish Office of Homeland Security and Emergency Preparedness at the time of the flooding event. Brown attested to the fact that approximately 5,250 structures in Ouachita Parish, including residences and businesses, sustained water intrusion and/or flooding during the flood events of March 8-11, 2016. Brown averred that many of the structures were not in flood zones and that much of the area would not have been adversely affected by a one hundred year flood event.
Certified copies of four reports generated from the United States Department of Commerce, National Oceanic & Atmospheric Administration, showing a total four-day rain fall amount of 20.67 inches at the Monroe Regional Airport, were submitted in support of summary judgment. Those documents confirm that a little more than six inches of rain fell at the airport from 6:00 p.m. on March 8, 2016, until 1:00 a.m. on March 9, 2016, and that by 2:00 a.m., that amount increased to more than seven inches.
Harvey also submitted portions of the depositions of Gaitano and Pamela Milazzo which confirmed that on March 8, 2016, at approximately 10:00 p.m., there was no water in the house. By 1:30 a.m., the following morning, however, water was above foot level in the residence. At some point prior to that time, Milazzo's daughter discovered water in the kitchen which she attributed to dishwasher overflow. Gaitano Milazzo returned to the residence at approximately 10:00 a.m. the following morning to discover eight to ten inches of rain in the house and his furniture "destroyed."
The portion of Harvey's deposition offered in support of summary judgment confirmed that he visited the house at 7:00 a.m. on March 9, 2016, when the water had receded, but the floors remained wet. According to Harvey, 11 inches of water eventually invaded the house a second time.
Harvey's affidavit was also submitted and showed he purchased the home in December of 2014 and lived in it for 12 months. Harvey claimed that the extent of his direct knowledge regarding any water intrusion events included information he received in connection with the house closing, when he was provided a flood loss history showing "prior flood claims" in September 1978, May 1989 and April 27, *350 2011. A copy of the "National Flood Insurance Program Property Loss History," documenting the prior flood claims, was referenced and attached to Harvey's affidavit. Harvey also submitted a letter from his counsel evidencing his partial reimbursement of the March 2016 rent to Milazzo.
Milazzo opposed the summary judgment, arguing that the flood summaries confirmed that only 6.08 inches of rain had fallen when the house experienced near ankle-deep flooding. Thus, Milazzo contended that factual support existed to show that the initial rain, and not the entire rain event, was sufficient to cause flooding and damage to his property and that Harvey had failed to show that the property damage resulted from an unusual rainfall.[3]
In opposition to the summary judgment, Milazzo submitted the affidavit of Charles Westrom, a 14-year employee of the City of Monroe Public Works Department who supervised the drainage pump stations for the city. Westrom possessed personal knowledge of flood events in Monroe as well as the location of flood-prone areas. Westrom attested to the fact that the location of Milazzo's house was "highly flood prone" and confirmed that when substantial rain fell, the area flooded. Westrom affirmed that the area had flooded numerous times without a "thousand year" flood, and he had personal knowledge that homes in this area had flooded "about three times in the past two years." Photographs taken "along Auburn Avenue," following the March 2016 flooding were attached to his affidavit and referenced by Westrom. The photographs depict sandbags in front of Milazzo's residence and destroyed household furnishings placed on the street for disposal in front of the Milazzo home and other homes in the area.
Milazzo also provided the affidavit of James Scalia who lived "four doors down" from Milazzo's house and confirmed that the area is highly flood prone. Scalia stated that his house had flooded four times in 15 years and verified that when his house flooded, Milazzo's house also flooded. Scalia attested to the fact that he could see Milazzo's house "from the street," and "a water mark on the house after it recedes," as well as the "flood-damaged belongings piled in front of the house," after "every flood." Scalia averred that the fact that the area is flood prone is "well known to people who have resided or owned property in this area for any length of time," and estimated that the Milazzo's house flooded "in response to a rainfall of approximately" four inches, an amount that was not unusual rainfall for the area.
The hearing on the motion for summary judgment took place on December 14, 2016. In written reasons, the trial court granted Harvey's summary judgment finding that the fact that Milazzo was never advised that the house flooded in past years did not "negate" the fact that the "million year" rainfall that the City of Monroe experienced was an "Act of God," which "overshadowed any perceived negligence on the part of the Landlord." A signed final judgment followed on June 13, 2017, dismissing Milazzo's claims without prejudice.
This appeal by Milazzo followed.
*351 DISCUSSION
Summary Judgment
Appellate courts review motions for summary judgment de novo , using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Peironnet v. Matador Res. Co. , 2012-2292 (La. 6/28/13), 144 So.3d 791.
The motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Schultz v. Guoth , 2010-0343 (La. 01/19/11), 57 So.3d 1002 ; Samaha v. Rau , 2007-1726 (La. 02/26/08), 977 So.2d 880 ; Chanler v. Jamestown Ins. Co. , 51,320 (La. App. 2 Cir. 05/17/17), 223 So.3d 614, writ denied , 2017-01251 (La. 10/27/17), 228 So.3d 1230.
A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 (A)(3). A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Jackson v. City of New Orleans , 2012-2742 (La. 01/28/14), 144 So.3d 876, cert. denied , --- U.S. ----, 135 S.Ct. 197, 190 L.Ed.2d 130 (2014) ; Chanler, supra. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony or weigh evidence. Chanler, supra. Whether a fact is "material" for purposes of summary judgment is determined in light of the substantive law applicable to the particular case. Franklin v. Dick , 51,479 (La. App. 2 Cir. 06/21/17), 224 So.3d 1130.
The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion is to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966 (D)(1).
An adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or other appropriate summary judgment evidence, must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967 (B) ; Larson v. XYZ Ins. Co. , 2016-0745 (La. 05/03/17), 226 So.3d 412.
Summary judgment is seldom appropriate for determinations based on subjective facts of motive, intent, good faith, knowledge or malice. Wells v. Town of Delhi , 51,222 (La. App. 2 Cir. 04/05/17), 216 So.3d 1095, writ denied , 2017-0753 (La. 09/22/17), 227 So.3d 821. Summary judgment is particularly inappropriate when the imposition of a statutory penalty depends on a finding that the litigant acted in bad faith or his conduct was arbitrary, capricious or without probable cause. Merwin v. Spears , 2012-0946 (La. 06/22/12), 90 So.3d 1041.
A summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by *352 the court at that time. La. C.C.P. art. 966 (F).
Act of God
The term "force majeure " means a superior or irresistible force. The concept of "force majeure " is similar to the common law concept of "act of God" which has been defined as a providential occurrence or extraordinary manifestation of the forces of nature which could not have been foreseen and the effect thereof avoided by the exercise of reasonable prudence, diligence and care, or by the use of those means which the situation renders reasonable to employ. Saden v. Kirby , 1994-0854 (La. 09/05/95), 660 So.2d 423.
When a "force majeure " or "act of God" combines or concurs with the conduct of a defendant to produce an injury, the defendant may be held liable for any damage that would not have occurred but for its own conduct or omission. Id.
Lessor's Liability
The lessor warrants the lessee that the thing is suitable for the purpose for which it was leased and that it is free of vices or defects that prevent its use for that purpose. La. C.C. art. 2696. This warranty also encompasses vices or defects that are not known to the lessor. La. C.C. art. 2697. Thus, the lessor is essentially strictly liable for vices and defects that cause harm to his lessee. Wells v. Norris , 46,458 (La. App. 2 Cir. 08/10/11), 71 So.3d 1165, writ denied , 2011-1949 (La. 11/18/11), 75 So.3d 465 ; Parker v. Oakleigh Apartments, LLC , 2013-0618 (La. App. 1 Cir. 12/27/13), writ denied , 2014-0197 (La. 04/04/14), 135 So.3d 1182 ; Johnson v. Thomas , 2013-0081 (La. App. 1 Cir. 12/27/13), 137 So.3d 632.
To prevail on a strict liability claim under La. C.C. art. 2696, the plaintiff must prove that the defendant had custody of the thing causing the injury; that it contained a defect, that is, a condition creating an unreasonable risk of harm; and that the defective condition caused plaintiff's injury. Wells, supra ; Johnson, supra ; Parker , supra. The lessor's liability is based on his status as landlord, not his personal fault; therefore, his lack of knowledge regarding the defect is inconsequential. Id.
The potentiality for flooding has been held to be a defect against which the lessor warrants. Volkswagen of Am., Inc. v. Robertson , 433 F.Supp. 164 (E.D. La. 1977). Susceptibility to flooding means a propensity, proneness or predisposition to flood under normal conditions and is also a redhibitory vice or defect. Smith v. Kennedy , 392 So.2d 177 (La. App. 2 Cir. 1980) ; Davis v. Davis , 353 So.2d 1060 (La. App. 2 Cir. 1977), writ denied , 355 So.2d 549 (La. 1978) ; Brannon v. Boe , 569 So.2d 1086 (La. App. 3 Cir. 1990) ; Braydon v. Melancon , 462 So.2d 262 (La. App. 1 Cir. 1984) ; Ford v. Broussard , 248 So.2d 629 (La. App. 3 Cir. 1971).
On appeal, Milazzo initially argues that the trial court erred in granting summary judgment based upon act of God. For the following reasons, we find merit to this argument.
Because the sole basis underlying the subject motion for summary judgment was force majeure or act of God, Harvey was required to carry his initial burden as mover to show that the act of God was sufficient in and of itself to preclude Milazzo's recovery. The undisputed evidence shows that on the days of March 8-11, 2016, the City of Monroe experienced an extraordinary "thousand year flood" event that may certainly be characterized as a force majeure or act of God. Nevertheless, as presented by the record before this Court, we find that proof of these facts alone is insufficient to defeat Milazzo's *353 stated claims for damages. Adequate factual support exists to establish that the Milazzo residence first experienced flooding prior to 1:30 a.m. on March 9, 2016, when Milazzo's daughter discovered water on the floor and less than six inches of rain had fallen in the area. The submissions also establish that the water rose to near ankle-deep when Milazzo discovered the flooding and between six and seven inches of rain was documented in the vicinity. Most persuasive to this analysis, however, is Harvey's testimony which establishes that this flooding had receded by 7:00 a.m. and his failure to dispute the allegations that he photographed damage that had been caused to the home by that initial flood event. We find that as they relate to the residence in question, the documents submitted in support of and opposition to the summary judgment are sufficient to establish that during the catastrophic rain event, Milazzo's residence was damaged by an initial flood event caused by only a small portion of the total four-day rain amount. Thus, although this initial rainfall amount was included in the total catastrophic event rain calculations, we find these facts sufficient to preclude the granting of summary judgment solely on the grounds of the entire March 2016 catastrophic rain event. When combined with the statements of individuals who had personal knowledge that the house flooded during ordinary rain events in the three preceding years, these facts provide sufficient factual support to raise genuine issues of material fact regarding whether the residence was flood prone under ordinary rain conditions such that Milazzo's damages were partly or totally caused by a warranty defect in the premises. Likewise, these circumstances are sufficient to raise genuine issues of material fact relating to Harvey's bad faith in failing to inform Milazzo of prior flooding events and Shelter's liability for penalties and attorney fees for failing to timely pay claims.
For these reasons, we find that the trial court erroneously granted summary judgment in favor of Harvey on the grounds of force majeure or act of God. The trial court's ruling is hereby reversed and the matter is remanded for further proceedings.[4] Costs of this appeal are assessed to Harvey.
REVERSED AND REMANDED.

Those family members included the Milazzo's daughter and granddaughter, mother/mother-in-law and three foster children.

Milazzo sought penalties and attorney fees for Shelter's arbitrary, capricious, unreasonable and without probable cause failure to timely initiate and/or pay a property damage claim.

Milazzo also argued that movers' exhibits were irrelevant because they related to rainfall after 1:30 a.m. on March 11, 2016, when the house had already flooded. Milazzo additionally complained that Brown offered expert testimony without qualifying as an expert and that the flood insurance records failed to establish that the house flooded on only three occasions prior to the date Milazzo purchased it or that the house did not flood after the date of Harvey's purchase.

Our reversal of the summary judgment moots Milazzo's remaining assignments of error.