Judgment rendered April 14, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,896-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

DIAMOND MCCATTLE COMPANY, L.L.C.     Appellants
AND BWW HOLDINGS, L.L.C.

versus

RANGE LOUISIANA OPERATING, LLC       Appellee

* * * * *

Appealed from the
Second Judicial District Court for the
Parish of Jackson, Louisiana
Trial Court No. 35267

Honorable Jimmy C. Teat, Judge

* * * * *

THE PESNELL LAW FIRM, A P.L.C.          Counsel for Appellants
By: Billy R. Pesnell
    John W. Pesnell

ALAN PESNELL LAWYER, LLC
By:  W. Alan Pesnell

COOK, YANCY, KING & GALLOWAY            Counsel for Appellees,
By: J. William Fleming                  Range Louisiana
    John T. Kalmbach                    Operating, LLC and
    W. Drew Burnham                     James Browning

* * * * *

Before PITMAN, STONE, and COX, JJ.

**COX, J.**

This suit arises out of the Second Judicial District Court, Jackson Parish, Louisiana. Plaintiffs, Diamond McCattle Company, LLC, and BWW Holdings, LLC brought suit against Range Louisiana Operating, LLC ("Range"), and James Browning[1] for subsurface trespass. Range filed a motion for summary judgment ("MSJ"), and Plaintiffs filed a partial MSJ. The trial court denied Plaintiffs' partial MSJ, granted Range's MSJ, and dismissed Plaintiffs' suit with prejudice. Plaintiffs now appeal.

## FACTS

Plaintiffs are the owners of the following described tract of land (hereinafter referred to as the "Subject Property"):

> A certain piece, parcel or lot of ground, together with all improvements thereon, rights, ways and privileges thereunto belonging or in any way appertaining; being, lying and situated in Section 12, Township 16 North, Range 1 West, Jackson Parish, Louisiana, and being more particularly described as follows, to wit:
>
> The East one-half (E 1/2) of the Southwest Quarter (SW 1/4), Section 12, Township 16 North, Range 1 West, LESS AND EXCEPT: 4.87 acres in the Southwest corner of Northeast Quarter (NE 1/4) of Southwest Quarter (SW 1/4), Section 12, Township 16 North, Range I West, being 267.85 feet East and West by 792 feet North and South. Containing 75 acres more or less, situated in Jackson Parish, Louisiana.

On January 12, 2018, Plaintiffs filed a petition for judicial relief from subsurface trespass against Range. Plaintiffs alleged that Range acted intentionally and in bad faith by horizontally drilling the Tri Delta 13-12 H No. 1 well (the "Well") under the Subject Property. Plaintiffs asserted that

---

[1] Mr. Browning was not named in the original petition, but was later added by Plaintiffs as he was Range's drill site supervisor for the subject well.

they are entitled to recover damages and be recognized as the owner of the well bore hole to the extent it is located on the Subject Property.

The Well's surface location is in the West Half of Section 13, Township 16 North, Range 1 West, on property owned by Tri-Delta Timber Group, LLC, on which Range had the right to conduct operations. Range applied for and obtained a drilling permit dated October 2, 2017, authorizing the drilling of a lease well to test the non-unitized "L Gray Sand."

The Well was actually drilled to the Lower Cotton Valley Formation, Reservoir A, for the Vernon Field, Jackson Parish, Louisiana (referred to as the "LCV RA Formation"). The LCV RA Formation is defined as being at the depth of 12,100 feet to 14,920 feet. Range drilled a total vertical depth of 14,243 feet, which correlates with the LCV RA Formation. After drilling to a total vertical depth of 14,243 feet, Range turned the drill bit and drilled horizontally (from south to north) for a total measured depth of 19,131 feet.[2] At a measured depth of 17,679.31 feet, the horizontal lateral crossed the underground plane between Sections 12 and 13, such that 1,443 feet of the wellbore is in the West half of Section 12, on the Subject Property. The Well is within two pre-existing drilling and production units created by the Louisiana Commissioner of Conservation—the LCV RA SU148 and LCV RA SU55.

The Well was completed on January 10, 2018. Range filed an application with the Office of Conservation on February 28, 2018, to have the permit amended from a "lease" well to a "unit" well. The Office of

---

[2] The total measured depth is the sum of both the vertical and horizontal depths.

Conservation issued an order designating the Well a unit well, effective March 27, 2018.

Defendants answered on January 14, 2019.[3] They denied the allegations by Plaintiffs, but admitted to the following: they did not have a lease with Plaintiffs; they did permit, drill, perforate, fracture, and complete the Well in the LCV RA Formation; and, they had no obligation to provide Plaintiffs with pre-entry notice. Defendants stated that Plaintiffs have failed to state a claim on which relief can be granted. Defendants asserted that the Well was drilled to depths subject to the LCV RA SU55 and LCV RA SU148 units, which include the Subject Property, and qualifies as a unit well for these two production units. They state that because of this, Plaintiffs are categorized as unleased owners and only have a claim for their share of production payments.

Plaintiffs amended their petition and stated that Range filed an "As Drilled" plat with the Office of Conservation, which showed that the bottom hole and lower perforation point of the Well are on Plaintiffs' property. Plaintiffs asserted that Range intentionally and knowingly drilled the Well on their property and Defendants acted in bad faith in drilling the Well. They also amended their petition to state that Range initially filed its well application as a "lease" well, but on February 28, 2018, it filed an application to amend its drilling permit to designate the well as a "unit" well. Plaintiffs

---

[3] On February 26, 2018, Range filed a notice of removal to Federal Court, arguing the parties were citizens of different states and the amount in controversy was over $75,000. Range asserted that its sole member is Range Resources Louisiana, Inc., a Delaware corporation, whose principal place of business is Texas. It stated the remaining parties are all Louisiana citizens. On April 16, 2018, the federal court found that subject matter jurisdiction existed pursuant to 28 U.S.C. §1332. Both parties filed multiple motions in federal court before the federal court granted Plaintiff's motion to remand to the 2nd JDC, Jackson Parish, Louisiana.

3

requested to be recognized as owners of the profits derived from the Subject Property, as well as the "works constructed" by Range on the Subject Property.

Defendants filed their MSJ arguing that their operations were unit operations; therefoer, Plaintiffs have no cause or right of action. They asked the court to dismiss Plaintiffs' claim with prejudice because there are no genuine issues of material fact and they are entitled to summary judgment as a matter of law. They asserted the following: The Commissioner of Conservation had previously included the Subject Property in the compulsory drilling and production unit for the LCV RA Formation; the Well was drilled to and completed in the LCV RA Formation; and, their operations in connection to the Well constituted unit operations for the existing LCV RA Formation drilling and production unit.

In support of their MSJ, Defendants submitted the affidavit of Philip N. Asprodites, attorney and former Louisiana Commissioner of Conservation. He stated it is a "common, normal, accepted practice" for the Office of Conservation to permit a well to a deeper, non-unitized formation, although the operator's main objective is to test a shallower, unitized formation. He also stated, "Consistent with the Office of Conservation accepted practices and procedures, all operations in connection with the [Well] are deemed to be unit operations for the LCV RA SU 148 and LCV RA SU 55 drilling and production."

Defendants also attached the affidavit of Jeffrey Klam, former land manager for Range. His responsibilities included overseeing the Well. He stated that Range originally sought a permit to test the "non-unitized L-

4

Gray," and from the commencement of operations, it was Range's intention that the Well would be drilled to the LCV RA Formation. He stated that Range then filed the appropriate paperwork with the Office of Conservation and the Commissioner found that the Well was drilled to the LCV RA Formation and designated it a unit well for the LCV RA SU55 and LCV RA SU148 units.

Defendants included the affidavit of James Browning. Mr. Browning stated he was working as a drilling supervisor for the Well beginning in November 2017. He described his responsibilities as implementing and overseeing Range's drilling plans, which put him in direct contact with Range regarding its plans. He stated that from the first day of drilling, Range's target was the "Lower Red," which is entirely within the LCV RA Formation.

Plaintiffs opposed Defendants' MSJ and filed a cross-motion for partial summary judgment. They claimed that Mr. Klam's affidavit is an unsworn declaration and Mr. Asprodites' affidavit is not based on personal knowledge, and both are not proper for consideration on MSJ. They argued that "Range falsely represented to the Commissioner of Conservation in its Application for a Drilling Permit that it had the consent or permission of all surface owners upon which 'drilling operations' for the [Well] would be conducted." Plaintiffs stated that they have been the owners of the Subject Property at all times relevant and never gave consent or authorization for Range to conduct any drilling on their property.

Plaintiffs argued that Defendants' MSJ is not supported by applicable law. They contrast their suit from that of *Nunez v. Wainoco Oil & Gas Co.*,

488 So. 2d 955 (La. 1986). They highlighted that the *Nunez* drilling permit stated it was for "any zone" down to a certain a depth. They asserted that the law of trespass is premised on the "fundamental sanctity of private property from arbitrary invasion." They cited case law which states trespass includes subsurface trespass. Plaintiffs also pointed out that Defendants drilled under the Subject Property, located the bottom hole under the Subject Property, and fracked the Well long before it was classified as a unit well. They also highlighted that Range began producing on January 22, 2018, after this suit was filed. Therefore, these were not unit operations and Range trespassed when it drilled on the Subject Property without consent. Plaintiffs claimed that they are entitled to be recognized as the owners of the Well's bottom hole and bore hole, to the extent they are located on the Subject Property. They also claimed they are entitled to an accounting from Range to determine their share of the profits both before and after the March 27, 2018 approval date.

Defendants opposed Plaintiffs' cross-motion for partial summary judgment, and adopted *in extenso* their arguments made in their own MSJ. They argued that *Nunez* is controlling, and that the intent of the operator determines if it is a unit operation or lease operation. They asserted that because it is a unit operation, which was their intent, there can be no claim for subsurface trespass. Defendants claim that the Plaintiffs' arguments relating to the initial permit as a lease well is a red herring because the Commissioner's Order, which was attached to the permit approval, stated that the Well must be completed in compliance with the 798 series of orders, which encompasses the LCV RA Formation.

6

Defendants argued that if the Plaintiffs were to prevail on the lease well designation, "then all of the other mineral owners in the unit would lose the right to share in the Well's production." Finally, Defendants asserted that there cannot be a trespass for failure to provide a "pre-entry notice" because those notices are only for surface operations.

Defendants attached the affidavit of Bob Anderson. Mr. Anderson stated that the Office of Conservation allows the permitting activity like that which occurred in this case (lease well amended to unit well) because it allows unit wells to be permitted to accommodate an operator's need to drill the well before a public hearing can be held recognizing the well as a substitute unit well, an alternate unit well, or a cross-unit horizontal well. Additionally, he stated that the well is deemed a unit well from the date of first production, notwithstanding the initial lease well designation.

A hearing on the motions was held on March 12, 2020. Both parties reiterated the same arguments they made in their filings. On June 23, 2020, the trial court issued its written reasons for judgment on the MSJ and partial MSJ. First, the trial court stated that the affidavits were permissible because they were expert opinions pertaining to the practices and procedures of the Office of Conservation. As to the affidavit of Mr. Browning, the trial court stated it established that Range's intention was always to drill a unit well. The trial court stated that Range was not required to provide pre-entry notice. It ordered Defendants to provide Plaintiffs with initial and quarterly reporting of the Well's costs and revenues, but overruled the remaining arguments by Plaintiffs in their partial MSJ. The trial court then cited *Nunez* and granted

Defendants' MSJ and dismissed Plaintiffs' claims with prejudice. Plaintiffs were assessed with all costs of the proceedings. Plaintiffs now appeal.

**DISCUSSION**

Plaintiffs seek review of the trial court's denial of their partial MSJ and granting of Defendants' MSJ. A *de novo* standard of review is required when an appellate court considers rulings on summary judgment motions, and the appellate court must use the same criteria that governed the trial court's determination of whether summary judgment was appropriate. *Bank of New York Mellon v. Smith*, 15-0530 (La. 10/14/15), 180 So. 3d 1238; *Davis v. Heniff Transp., LLC*, 52,048 (La. App. 2 Cir. 5/23/18), 249 So. 3d 183.

A court must grant a motion for summary judgment if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law, pursuant to La. C.C.P. art. 966(A)(3). *Davis v. Heniff Transp., LLC, supra.* A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Green v. Brookshire Grocery Co.*, 53,066 (La. App. 2 Cir. 9/25/19), 280 So. 3d 1256. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876, *cert. denied,* 574 U.S. 869, 135 S. Ct. 197, 190 L. Ed. 2d 130 (2014); *Green v. Brookshire Grocery Co., supra.* In determining whether an issue is genuine, a court should not consider the merits, make credibility

determinations, evaluate testimony, or weigh evidence. *Green v. Brookshire Grocery Co., supra*.

Plaintiffs argue that the trial court erred in granting Defendants' MSJ because the affidavits submitted in support of the MSJ were not admissible and there exist genuine issues of material fact, which preclude summary judgment. Specifically, they argue that the affidavits of Mr. Asprodites, Mr. Mr. Anderson, and Mr. Browning do not controvert or deny any of Range's filings with the Office of Conservation. They assert that Mr. Browning's affidavit stating that Range's intention was to drill to the LCV RA Formation is hearsay and directly contradicts Range's representation to the Office of Conservation in its permit to drill to the deeper, L-Gray Sand.

Our jurisprudence indicates that it is the intent of the operator and the operations conducted which determine whether drilling operations constitute unit operations or merely lease operations. *See Nunez v. Wainoco Oil & Gas Co., supra.* In the case before us, Mr. Browning, the drilling supervisor, stated it was Range's intention all along to drill within the LCV RA Formation, specifically the Lower Red. Mr. Klam, Range's land manager, stated that Range drilled to its intended vertical depth of 14,243 feet. This is the vertical depth listed on Range's drilling permit. This depth correlates with the LCV RA Formation, not the deeper, L-Gray Sand.

Plaintiffs argue that Mr. Browning's affidavit is irrelevant and immaterial because it purports to vary or contradict Range's drilling application. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters

stated therein. La. C.C.P. art. 967. It is insufficient for an affiant to merely declare that he has personal knowledge of a fact. The affidavit must affirmatively establish that the affiant is competent to testify as to the matter by a factual averment showing how he came by the knowledge. *Chanler v. Jamestown Ins. Co.*, 51,320 (La. App. 2 Cir. 5/17/17), 223 So. 3d 614, *writ denied*, 2017-01251 (La. 10/27/17), 228 So. 3d 1230. The court must first determine whether the supporting affidavits and documents presented by the moving party are sufficient to resolve all material issues of fact. If they are not sufficient, summary judgment is not appropriate. *Id.*

Mr. Browning's affidavit is based on his personal knowledge as the drilling supervisor for the Well. He stated that he knew Range's intentions in drilling because it was his responsibility to implement and oversee Range's drilling plans with respect to the Well. He stated that from the beginning of drilling, the target formation was the Lower Red, within the LCV RA Formation. This affidavit was properly considered by the trial court in determining Range's intentions during well operations.

Plaintiffs have not submitted any evidence to contradict Range's stated intent. Plaintiffs' arguments all center around the original permit, which lists the zone or reservoir of proposed completion as the L-Gray Sand. However, directly under the L-Gray designation, the permit states the true vertical depth is 14,243 feet, which is shallower than the L-Gray. Additionally, Defendants submitted the affidavits of experts to clarify the permitting process and why the L-Gray designation is not controlling.

Mr. Asprodites, a former Commissioner of the Office of Conservation, stated that it is a "common, normal, accepted practice" to permit a well to a

10

deeper, non-unitized formation, although the operator's main objective is to test a shallower, unitized formation. Plaintiffs did not present any evidence or their own expert to controvert Mr. Asprodites' statements.

Mr. Anderson, a petroleum engineer and 20-year employee of the Office of Conservation, stated that the Well was a cross-unit well, requiring a public hearing. He explained that it is common practice in the Office of Conservation for cross-unit wells to be first named as lease wells in order to accommodate the operator's need to drill before a hearing can be held recognizing the well as cross-unit well.

We disagree with Plaintiffs' arguments and find these expert affidavits to be admissible. An affidavit of an expert may set forth opinions "as would be admissible in evidence under Louisiana Code of Evidence Article 702," and shall show affirmatively the affiant is competent to testify to the matters stated therein. *See* La. C.C.P. art. 967(A). Article 702 permits an expert witness to testify in the form of an opinion if (1) the witness's expertise will help the trier of fact to understand the evidence or to determine a fact in issue, (2) the testimony is based on sufficient facts or data, (3) the testimony is the product of reliable principles and methods, and (4) the expert has reliably applied the principles and methods to the facts of the case. La C.C.P. art. 967(B) states the following:

> When a motion for summary judgment is made and supported as provided [in section A], an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.

11

Mr. Asprodites has been accepted in both state and federal courts as an expert in the Louisiana Office of Conservation's practices, procedures, and the application of their rules, regulations, and governing statutes. His affidavit is helpful in understanding the Office of Conservation's procedures and practices. His affidavit is based on sufficient facts, i.e. Range's filings with the Office of Conservation. Mr. Asprodites' affidavit is based on the principles governing the operation of the Office of Conservation and applied those principles. For these reasons, we see no issue in the trial court allowing the affidavit of Mr. Asprodites.

Mr. Anderson also relied on Range's filings with the Office of Conservation. He then explained the procedure within the Office of Conservation for a cross-unit well to be recognized. Mr. Anderson's knowledge was based on 20 years of employment with the Office of Conservation, as well as employment as a petroleum engineer. He has handled hundreds of drilling applications and hearings before the Office of Conservation, making him very familiar with the policies and procedures of that office. We find no error in the trial court allowing the affidavit of Mr. Anderson.

Defendants' supporting affidavits are sufficient to resolve all issues of material fact. Plaintiffs did not counter these affidavits with their own evidence of Range's intent or that these were not the procedures of the Office of Conservation. After our *de novo* review of this record, we find that there are no genuine issues of material fact which render summary judgment in favor of Defendants improper at this time. Because the facts show the Well to be a unit well, we also find that the Plaintiffs have not shown that Range

12

committed a subsurface trespass, and therefore, their partial MSJ was properly denied.[4]

## CONCLUSION

For the reasons stated above, we affirm the trial court's granting of Defendants' MSJ, dismissal of Plaintiffs' suit with prejudice, and denial of Plaintiffs' partial MSJ.  The costs of this Court are assessed to the Plaintiffs, Diamond McCattle Company, LLC, and BWW Holdings, LLC.

**AFFIRMED.**

---

[4] Any challenge to the Office of Conservation's policies and procedures regarding lease wells being amended to unit wells is not properly before this Court.